[No. B044186. Second Dist., Div. Three. Feb. 14, 1990.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
LEE EDWARD HARRIS, Real Party in Interest.

## COUNSEL

Ira Reiner, District Attorney, Harry B. Sondheim, Dinko J. Bozanich and Brent Riggs, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Charles Gessler, Carl Kandel and Henry J. Hall, Deputy Public Defenders, for Real Party in Interest.

## OPINION

## ARABIAN, J.—

### INTRODUCTION

May the prosecution seek the death penalty on retrial after reversal of a conviction in which the defendant was sentenced to life in prison without possibility of parole? We answer no.

### FACTUAL AND PROCEDURAL STATEMENT

Lee Edward Harris stands accused of two counts of first degree murder (Pen. Code, § 187).[1] The prosecution has alleged special circumstances which, if found true, would make him eligible for the death penalty (former Pen. Code, § 190.2, subds. (c)(3)(i), (c)(3)(v), (c)(5)). He currently awaits a third trial on these charges.[2]

This case has had a long and tortured history. Harris's first conviction, wherein he received the death penalty, was reversed by the California Supreme Court due to errors in the composition of the jury venire. (*People* v.

---

[1] Harris is also charged with one count of residential burglary (Pen. Code, § 459) and two counts of robbery (Pen. Code, § 211).

[2] The particulars of Harris's criminal activity are detailed in *People v. Harris* (1984) 36 Cal.3d 36, 43-45 [201 Cal.Rptr. 782, 679 P.2d 433].

*Harris, supra*, 36 Cal.3d at pp. 45-59.) On retrial, the jury again found him guilty as charged but determined he should be sentenced to life imprisonment without parole. Harris obtained a second reversal, this time because the trial court erroneously prevented him from testifying. (*People* v. *Harris* (1987) 191 Cal.App.3d 819, 824-826 [236 Cal.Rptr. 680].)

Following remand, the People announced their intention to again seek the death penalty. Harris objected, claiming a violation of both the state and federal constitutional proscriptions against double jeopardy. Finding that the penalty phase of the prosecution constituted a trial, respondent superior court denied the request to reinstate the death penalty as a possible sentencing alternative.

The People petitioned the California Supreme Court for a writ of mandate to reverse the trial court's ruling. The Supreme Court transferred the matter to this court without comment. We issued an alternative writ soliciting a response from Harris as real party in interest.

## DISCUSSION

In *People* v. *Henderson* (1963) 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677], the California Supreme Court determined that "[a] defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal."

In *Henderson*, the defendant was originally tried for first degree murder and sentenced to life imprisonment. The Court of Appeal reversed the conviction; and on retrial the jury found him guilty of the same offense and fixed the penalty at death. (60 Cal.2d at p. 484.) On automatic review, the Supreme Court reversed the judgment for errors during the trial but also agreed with the defendant's contention that principles of double jeopardy prohibited the more severe sentence.

In reaching this conclusion, the court reasoned that the same rationale that "precluded convicting a defendant of a higher degree of a crime after he had secured reversal of his conviction of the lower degree" (60 Cal.2d at p. 496) also obtained with respect to an increased penalty after reversal: "[A] defendant is not required to elect between suffering an erroneous conviction to stand unchallenged and appealing therefrom at the cost of forfeiting a valid defense to the greater offense . . . [;] ' "a defendant faced with such a 'choice' takes a 'desperate chance' in securing the reversal of the

erroneous conviction. The law should not, and in our judgment does not, place the defendant in such an incredible dilemma." ' [Citation.] This reasoning applies with equal force to the present case." (*Ibid.*; see *Green* v. *United States* (1957) 355 U.S. 184, 191-195 [2 L.Ed.2d 199, 206-209, 78 S.Ct. 221, 61 A.L.R.2d 1119]; *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640, 651-652 [328 P.2d 976].)

The holding in *Henderson* expressly derived from the state constitutional bar against double jeopardy. (*People* v. *Henderson, supra,* 60 Cal.2d at pp. 496-497; see former Cal. Const., art. I, § 13, now art. I, § 15; see also *Palko* v. *Connecticut* (1937) 302 U.S. 319 [82 L.Ed. 288, 58 S.Ct. 149], overruled in *Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715-716, 89 S.Ct. 2056].) ▉ Nevertheless, the People argue the holding is no longer viable or persuasive because its federal underpinnings have not developed as the Supreme Court's analysis anticipated; hence, its rule no longer comports with the trend in federal law the court intended as its guide. Since "[t]he guarantee against double jeopardy in the California Constitution is almost precisely the same as that found in the federal Constitution" (*Gomez* v. *Superior Court, supra,* 50 Cal.2d at p. 649), we are now urged to apply it consistent with subsequent United States Supreme Court decisions resolving the salient issues against criminal defendants. (See, e.g., *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072].)

We find these contentions without merit in several respects. First, when *Henderson* and *Gomez* were decided, federal double jeopardy law did not apply to the states. (See *Palko* v. *Connecticut, supra,* 302 U.S. 319.) Thus, the most logical implication of these earlier decisions is that the state right should be construed as expansively as the federal right. In other words, the state protection should extend at least as far as the similarly worded federal protection. As the court further observed in *Gomez:* "It appears to us that if the spurious distinction made by the California cases is perpetuated in the case at bar we would be giving our constitutional prohibition against twice in jeopardy a 'narrow, grudging application' unsupported by either logic or reason." (*Gomez* v. *Superior Court, supra,* 50 Cal.2d at p. 649.)

Second, even after *Benton* v. *Maryland, supra,* 395 U.S. 784, made the federal guarantee applicable to the states, the California Supreme Court continued to explicate the state double jeopardy provision independently. "*Benton* requires only that the states accord their citizens at least as much protection against double jeopardy as is provided under the Fifth Amendment of the United States Constitution; it does not forbid a state from according a *greater* degree of such protection. [Citation; fn. omitted.]" (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 716 [87 Cal.Rptr. 361, 470 P.2d 345]; see *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119

Cal.Rptr. 302, 531 P.2d 1086]; *People* v. *Belcher* (1974) 11 Cal.3d 91, 97 [113 Cal.Rptr. 1, 520 P.2d 385].) In support of this conclusion, the court has cited specifically to *People* v. *Henderson, supra,* as an instance of the broader protection afforded under the state Constitution. (See *Curry* v. *Superior Court, supra*, 2 Cal.3d at p. 716; see also *Diamond* v. *Bland* (1974) 11 Cal.3d 331, 339 [113 Cal.Rptr. 468, 521 P.2d 460], overruled on other grounds in *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 910 [153 Cal.Rptr. 854, 592 P.2d 341].)

Third, our Supreme Court continues to reiterate its concern that a defendant not be placed in the " ' "incredible dilemma" ' " of suffering an erroneous conviction to stand unchallenged or risking a more severe sentence (*People* v. *Henderson, supra*, 60 Cal.2d at pp. 496-497) even though the United States Supreme Court has since determined that in general "the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction." (*North Carolina* v. *Pearce, supra*, 395 U.S. at p. 719 [23 L.Ed.2d at p. 666].) Although presented with both the opportunity to do so and subsequent clarification of federal constitutional law, the court has never retreated from the rationale or holding of *Henderson.* (See, e.g., *People* v. *Collins* (1978) 21 Cal.3d 208, 216-217 [145 Cal.Rptr. 686, 577 P.2d 1026]; *People* v. *White* (1976) 16 Cal.3d 791, 802 [129 Cal.Rptr. 769, 549 P.2d 537]; *People* v. *Serrato* (1973) 9 Cal.3d 753, 763-764 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]; *Curry* v. *Superior Court, supra*, 2 Cal.3d at pp. 716-717; *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal Rptr. 618, 462 P.2d 370]; see also *People* v. *Ali* (1967) 66 Cal.2d 277, 281 [57 Cal.Rptr. 348, 424 P.2d 932]; *People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1047-1048 [216 Cal.Rptr. 865]; *People* v. *Savala* (1983) 147 Cal.App.3d 63, 67 [195 Cal.Rptr. 193], disapproved on other grounds in *People* v. *Foley, supra*, 170 Cal.App.3d at p. 1044; *People* v. *Harvey* (1978) 76 Cal.App.3d 441, 447-448 [142 Cal.Rptr. 887].)

Moreover, although the People contend *North Carolina* v. *Pearce, supra*, 395 U.S. 711, seriously impaired *Henderson*'s federal underpinnings, that decision recognized "an important exception" grounded in sufficiency of the evidence review. (*Bullington* v. *Missouri* (1981) 451 U.S. 430, 442-446 [68 L.Ed.2d 270, 280-284, 101 S.Ct. 1852].) If the defendant's "sentencing proceeding . . . was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him, with respect to the death penalty, at his retrial." (*Id.*, at p. 446 [68 L.Ed.2d at p. 284], fn. omitted; see also *Arizona* v. *Rumsey* (1984) 467 U.S. 203, 209-212 [81 L.Ed.2d 164, 170-172, 104 S.Ct. 2305].)

In *Bullington* v. *Missouri, supra*, 451 U.S. 430, the Supreme Court addressed the question of whether the prosecution could seek the death penalty on retrial of a defendant originally sentenced to life imprisonment without parole. The court first acknowledged its prior resistence to extending the protections of the double jeopardy clause to resentencing. (*Id.*, at pp. 437-438 [68 L.Ed.2d at pp. 277-279].) Nevertheless, the procedure detailed in the Missouri death penalty law "differ[ed] significantly" from those in earlier cases. "The jury in [*Bullington*] was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes. [Fn. omitted.]" (*Id.*, at p. 438 [68 L.Ed.2d at pp. 278-279].)

To this end, "counsel make opening statements, testimony is taken, evidence is introduced, the jury is instructed, and final arguments are made. The jury then deliberates and returns its formal punishment verdict." (451 U. S. at p. 438, fn. 10 [68 L.Ed.2d at p. 279].) "In contrast, the sentencing procedures considered in the Court's previous cases did not have the hallmarks of the trial on guilt or innocence. In [*North Carolina* v. *Pearce, supra*, 395 U.S. 711, *Chaffin* v. *Stynchcombe* (1973) 412 U.S. 17 (36 L.Ed.2d 714, 93 S.Ct. 1977), and *Stroud* v. *United States* (1919) 251 U.S. 15 (64 L.Ed. 103, 40 S.Ct. 50)], there was no separate sentencing proceeding at which the prosecution was required to prove—beyond a reasonable doubt or otherwise—additional facts in order to justify the particular sentence. In each of those cases, moreover, the sentencer's discretion was essentially unfettered. In Stroud, no standards had been enacted to guide the jury's discretion. In Pearce, the judge had a wide range of punishments from which to choose with no explicit standards imposed to guide him. And in Chaffin, the discretion given to the jury was extremely broad. [Fns. omitted.]" (*Id.*, at p. 439 [68 L.Ed.2d at p. 279].)

Adverting to its decisions holding "that a retrial on . . . first-degree murder charge [following reversal of a second degree murder conviction] was barred by the Double Jeopardy Clause, because the defendant 'was forced to run the gantlet once on that charge and the jury refused to convict him' [citations]," the Supreme Court concluded that "the 'clean slate' rationale recognized in Pearce is inapplicable whenever a jury agrees or an

appellate court decides that the prosecution has not proved its case [as to sentencing]." (451 U. S. at p. 443 [68 L.Ed.2d at pp. 281-282].) By choosing life without parole, " 'the jury ha[d] already acquitted [defendant Bullington] of whatever was necessary to impose the death sentence.' [Citation.]" (*Id.*, at p. 445 [68 L.Ed.2d at p. 283].) "Having received 'one fair opportunity to offer whatever proof it could assemble,' [citation] the State is not entitled to another." (*Id.*, at p. 446 [68 L.Ed.2d at p. 283].) The Supreme Court reached the same conclusion on review of a comparable death penalty law in *Arizona* v. *Rumsey, supra*, 467 U.S. at pages 209-212 [81 L.Ed.2d at pages 170-172]. (But see *Poland* v. *Arizona* (1986) 476 U.S. 147, 154-155 [90 L.Ed.2d 123, 131-132, 106 S.Ct. 1749] [defendant may again face death penalty when original death sentence is overturned for error in sentencing procedure and not because prosecution failed to prove its case]; *Spaziano* v. *Florida* (1984) 468 U.S. 447, 465 [82 L.Ed.2d 340, 355-356, 104 S.Ct. 3154] [under Florida death penalty law, judge is vested with sole sentencing responsibility and may impose death over jury's "advisory" recommendation of life without parole].)

The California death penalty law at issue here bears many of the crucial earmarks of the statutory schemes found to invoke double jeopardy protection in *Bullington* v. *Missouri, supra*, and *Arizona* v. *Rumsey, supra*. (See former Pen. Code, § 190 et seq., Stats. 1977, ch. 316, §§ 1-26, pp. 1255-1266.)[3] Section 190.2 provides that the penalty for first degree murder accompanied by special circumstances "shall be death or confinement in the state prison for life without possibility of parole . . . . " [4] The decision as to life or death is made in "a separate penalty hearing" at which the "trier of fact" shall be "a jury unless a jury is waived by the defendant and the people." The jury also must reach "a unanimous verdict as to what the penalty shall be" if the sentence is fixed at death. (§ 190.4; see also *People* v. *Miranda* (1987) 44 Cal.3d 57, 99 [241 Cal.Rptr. 594, 744 P.2d 1127].)[5] "In the proceedings on the question of penalty, evidence may be presented by both the people and the defendant as to any matter relevant to aggravation,

---

[3] All further statutory references are to Penal Code sections extant in 1977.

[4] Former section 190.2 states in part: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more . . . special circumstances has been charged and specially found, in a proceeding under Section 190.4, to be true . . . ."

[5] Former section 190.4 states in part: "(b) If defendant was convicted by the court sitting without a jury, the trier of fact at the penalty hearing shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and the people.

"If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and impose a punishment of confinement in state prison for life without possibility of parole."

mitigation, and sentence . . . ." (§ 190.3.)[6] Section 190.3 sets forth a list of 10 such factors and further provides that "[a]fter having heard and received all of the evidence, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances . . . , and shall determine whether the penalty shall be death or life imprisonment without the possibility of parole." (See also *People* v. *Murtishaw* (1989) 48 Cal.3d 1001, 1027, fn. 12 [258 Cal.Rptr. 821, 773 P.2d 172]; *People* v. *Frierson* (1979) 25 Cal.3d 142, 165 [158 Cal.Rptr. 281, 599 P.2d 587].)

In conformance with the foregoing, the record of Harris's sentencing reflects not only a full evidentiary hearing but also extensive argument by counsel focusing on matters relevant to the question of his appropriate penalty. Thus, in all significant respects except for standard

---

[6] Former section 190.3 states in part: "In the proceedings on the question of penalty, evidence may be presented by both the people and the defendant as to any matter relevant to aggravation, mitigation, and sentence, including, but not limited to, the nature and circumstances of the present offense, the presence or absence of other criminal activity by the defendant which involved the use or attempted use of force or violence or which involved the expressed or implied threat to use force or violence, and the defendant's character, background, history, mental condition and physical condition.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In determining the penalty the trier of fact shall take into account any of the following factors if relevant:

"(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.

"(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the expressed or implied threat to use force or violence.

"(c) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"(d) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

"(e) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

"(f) Whether or not the defendant acted under extreme duress or under the substantial domination of another person.

"(g) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or the affects of intoxication.

"(h) The age of the defendant at the time of the crime.

"(i) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

"(j) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.

"After having heard and received all of the evidence, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall determine whether the penalty shall be death or life imprisonment without the possibility of parole."

of proof,[7] the procedural mechanism by which the jury determined to spare Harris's life corresponded to those the United States Supreme Court has held to invoke the proscription against double jeopardy. ■■■ Whatever minor differences may exist, the proceedings nevertheless subjected him to "[t]he 'embarrassment, expense and ordeal' and the 'anxiety and insecurity' . . . at least equivalent to that faced by any defendant at the guilt phase of a criminal trial." (*Bullington* v. *Missouri, supra*, 451 U.S. at p. 445 [68 L.Ed.2d at p. 283].) Since federal law would thus preclude the prosecution from again seeking the death penalty, we would be loathe to interpret the state protection more narrowly.

In summary, we perceive no distinction between the instant facts and those of *People* v. *Henderson, supra*, sufficient to justify any departure from its clear mandate. The "choice" between life and death still constitutes the same "incredible dilemma." Compelled by principles of stare decisis, we resolve the issue before us against the petitioner. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## CONCLUSION

As the courts regularly observe, "death as a punishment is unique in its severity and irrevocability [citation]" (*Gregg* v. *Georgia* (1976) 428 U.S. 153, 187 [49 L.Ed.2d 859, 882, 96 S.Ct. 2909]), and "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." (*California* v. *Ramos* (1983) 463 U.S. 992, 998-999 [77 L.Ed.2d 1171, 1178-1179, 103 S.Ct. 3446], fn. omitted.) When, as here, the defendant has confronted the possibility of this ultimate sanction and 12 of his peers have determined that the balance of aggravating and mitigating circumstances does not warrant it, he should not be compelled to hazard death once more.

■■ "The theory of double jeopardy is that a person need run the gantlet only once. The gantlet is the risk of the range of punishment which the State or Federal Government imposes for that particular conduct. It may be a year to 25 years, or 20 years to life, or death. He risks the maximum permissible punishment when first tried. That risk having been faced once need not be faced again. And the fact that he takes an appeal does not waive his constitutional defense of former jeopardy to a second prosecution. [Cita-

---

[7]Although the California Supreme Court has declined to mandate proof of aggravating circumstances beyond a reasonable doubt (see *People* v. *Frierson, supra*, 25 Cal.3d at pp. 178-180), "the death penalty can be applied only if the trier of fact finds aggravating circumstances outweigh mitigating circumstances. [Citation.]" (*People* v. *Robertson* (1989) 48 Cal.3d 18, 58-59 [255 Cal.Rptr. 631, 767 P.2d 1109].)

tion.]" (*North Carolina* v. *Pearce, supra*, 395 U.S. 711, 727 [23 L.Ed.2d 656, 670] (conc. opn. of Douglas, J.).)

## DISPOSITION

The petition is denied. The alternative writ is discharged, and the stay of trial proceedings ordered September 6, 1989, is vacated.

Klein, P. J., and Danielson, J., concurred.

Petitioner's application for review by the Supreme Court was denied May 17, 1990. Arabian, J., did not participate therein.