[No. S047306. Dec. 24, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID HERNANDEZ, Defendant and Appellant.

**COUNSEL**

Martha M. Hall, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne, Keith I. Motley, Esteban Hernandez and Janelle Marie Boustany, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, J.**—In this case, we consider whether either the state or federal prohibition against double jeopardy bars a trial court from changing its ruling on the applicability of a sentence enhancement.

Following defendant's conviction on various felony charges, the trial court considered whether he should receive a five-year sentence enhancement under Penal Code section 667, former subdivision (a) (now designated subdivision (a)(1)),[1] because he had a prior serious felony conviction. The trial court agreed with the prosecution that defendant had a prior serious felony conviction, but it found that section 667, former subdivision (a), did not apply because, in its opinion, none of defendant's *present* convictions constituted a serious felony. The trial court later reconsidered and reversed

---

[1] All further statutory references are to the Penal Code. All further references to former subdivision (a) of section 667 refer to the language now designated as subdivision (a)(1) of that section.

that initial decision. The Court of Appeal held that the trial court's reconsideration of its initial decision constituted double jeopardy and was therefore unconstitutional. We conclude that the state and federal prohibitions against double jeopardy do not apply to noncapital sentencing determinations. We also conclude that imposition of the sentence enhancement here constituted a noncapital sentencing determination, not a conviction of a new crime. Accordingly, we reverse the judgment of the Court of Appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury found defendant guilty of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)), battery with serious bodily injury (§ 243, subd. (d)), petty theft (§ 484), and corporal injury to a cohabitant (§ 273.5, subd. (a)). After recording the verdict and dismissing the jury, the court held a hearing on whether defendant should receive a five-year sentence enhancement under section 667, former subdivision (a), because he had a prior serious felony conviction. The prosecution presented certified copies of the prior conviction and of booking documents bearing defendant's fingerprints. Defense counsel then argued that none of defendant's *present* felonies qualified as a "serious felony," and therefore section 667, former subdivision (a), did not apply.

When defendant committed his present crimes, section 667, former subdivision (a), provided that "any person *convicted of a serious felony* who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." (Stats. 1989, ch. 1043, § 1, p. 3619, italics added.) Former subdivision (d) of section 667 defined "serious felony" as "a serious felony listed in subdivision (c) of Section 1192.7." (Stats. 1989, ch. 1043, § 1, p. 3620.) The court concluded that, of defendant's four present crimes, only battery with serious bodily injury (§ 243, subd. (d)) might qualify as a "serious felony." Section 1192.7, subdivision (c), does not expressly mention battery with serious bodily injury, but subdivision (c)(8) refers to "any other felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . ." This language would seem to cover defendant's battery conviction, but the court nevertheless concluded that defendant had not committed a serious felony. The court reasoned that section 1192.7, subdivision (c)(8), implicitly requires proof of *specific intent* to inflict great bodily injury. It noted that battery with serious bodily injury is a general intent crime and that, given that defendant was intoxicated at the time of his offense, the prosecution had not proved specific intent. Because the court believed that none of defendant's present felonies was a

serious felony, it agreed with defendant that section 667, former subdivision (a), did not apply. Nevertheless, the court specifically found that defendant had in fact been convicted of a prior serious felony as alleged.

Later, at sentencing, the prosecution challenged the court's conclusion that section 1192.7, subdivision (c)(8), required proof of specific intent, citing for the first time *People* v. *Moore* (1992) 10 Cal.App.4th 1868 [13 Cal.Rptr.2d 713] (*Moore*). *Moore* held that battery with serious bodily injury (§ 243, subd. (d)) is, as a matter of law, a "serious felony," assuming, as is true here, that the defendant is "the sole perpetrator of the crime." (*Moore*, *supra*, 10 Cal.App.4th at p. 1871.) Noting, in light of *Moore*, that proof of specific intent is not necessary under section 1192.7, subdivision (c)(8), the court reversed its previous ruling and held that defendant's present battery conviction constituted a "serious felony," and therefore that section 667, former subdivision (a), applied. The court imposed a sentence of four years in state prison for the present felony convictions plus a five-year enhancement for the prior serious felony conviction, for a total sentence of nine years.

Concluding that defendant "was put in jeopardy twice" when the trial court reconsidered its initial decision, the Court of Appeal reversed the trial court's application of section 667, former subdivision (a), and struck the five-year sentence enhancement. We granted review to decide whether double jeopardy principles precluded the trial court from reconsidering its initial decision finding section 667, former subdivision (a), inapplicable.

## DISCUSSION

■ The double jeopardy clause of the federal Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." (U.S. Const., Amend. V.) In *Monge* v. *California* (1998) 524 U.S. 721 [118 S.Ct. 2246, 141 L.Ed.2d 615] (*Monge*), a case similar in many ways to this one, the United States Supreme Court held that this prohibition against double jeopardy does not apply to noncapital sentencing determinations. (*Id.* at p. __ [118 S.Ct. at p. 2248, 141 L.Ed.2d at p. 621].)

At issue in *Monge* was the truth of a prior serious felony allegation. (*Monge*, *supra*, 524 U.S. at p. __ [118 S.Ct. at p. 2249, 141 L.Ed.2d at p. 622].) The trial court found the allegation true and doubled the defendant's sentence in accordance with the "Three Strikes" law. (*Ibid.*; §§ 667, subd. (e)(1), 1170.12, subd. (c)(1).) The Court of Appeal reversed the true finding, holding that the prior felony did not qualify as a serious felony for purposes

of the Three Strikes law because the record contained no evidence that defendant personally used a deadly weapon or personally inflicted great bodily injury. (*Monge, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2249, 141 L.Ed.2d at p. 622].) The Court of Appeal also held that double jeopardy protections barred retrial of the allegation. (*Ibid.*) We granted review and found the state and federal double jeopardy protections inapplicable. (*People v. Monge* (1997) 16 Cal.4th 826, 845 [66 Cal.Rptr.2d 853, 941 P.2d 1121] (plur. opn. of Chin, J.); see also *id.* at p. 847 (conc. opn. of Brown, J.).)

The United States Supreme Court affirmed. The high court stated that the federal Constitution's double jeopardy prohibition does not apply to non-capital sentencing determinations even if the sentencing proceeding had the " 'hallmarks of the trial on guilt or innocence.' " (*Monge, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2251, 141 L.Ed.2d at p. 625]; see also *id.* at pp. __-__ [118 S.Ct. at pp. 2252-2253, 141 L.Ed.2d at pp. 626-628].) The court stated, "Where noncapital sentencing proceedings contain trial-like protections, that is a matter of legislative grace, not constitutional command. Many States have chosen to implement procedural safeguards to protect defendants who may face dramatic increases in their sentences as a result of recidivism enhancements. We do not believe that because the States have done so, we are compelled to extend the double jeopardy bar. Indeed, were we to apply double jeopardy here, we might create disincentives that would diminish these important procedural protections." (*Id.* at p. __ [118 S.Ct. at p. 2253, 141 L.Ed.2d at pp. 627-628].)

Justice Scalia, joined by Justices Souter and Ginsburg, agreed with the majority that the federal prohibition against double jeopardy does not apply to noncapital sentencing determinations. (*Monge, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2255, 141 L.Ed.2d at p. 630] (dis. opn. of Scalia, J.).) He nevertheless dissented, arguing that, for federal constitutional purposes, a sentence enhancement is "conviction of a new crime," not merely a sentencing determination. (*Id.* at p. __ [118 S.Ct. at p. 2256, 141 L.Ed.2d at p. 632] (dis. opn. of Scalia, J.), fn. omitted.) Justice Scalia acknowledged that the court had held otherwise in *Almendarez-Torres* v. *U.S.* (1998) 523 U.S. 224 [118 S.Ct. 1219, 140 L.Ed.2d 350] (*Almendarez-Torres*), but he noted "that *Almendarez-Torres* left open the question whether 'enhancements' . . . *that do not involve the defendant's prior criminal history* are valid. That qualification is an implicit limitation on the Court's holding today." (*Monge, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2257, 141 L.Ed.2d at p. 632] (dis. opn. of Scalia, J.), italics added.)

Presumably, Justice Scalia would conclude that an enhancement not involving the defendant's prior criminal history is "conviction of a new crime"

for purposes of the federal Constitution and therefore subject to the double jeopardy prohibition. Though the enhancement in this case involves defendant's prior criminal history, the specific issue that the trial court reconsidered—whether the enhancement applied—involved characterization of defendant's *present* offenses. Defendant focuses on this distinction and argues on that basis that *Monge* is not controlling here. We disagree.

The high court spoke categorically in *Monge*, concluding that the federal double jeopardy clause does not apply to noncapital sentencing determinations and making no distinction between sentencing retrials that turn on the facts of the present offense and sentencing retrials that turn on the truth of the prior conviction allegation. (*Monge, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2248, 141 L.Ed.2d at p. 621].) The court noted that it had "[h]istorically . . . found double jeopardy protections inapplicable to sentencing proceedings [citation] because the determinations at issue do not place a defendant in jeopardy for an 'offense' [citation]." (*Id.* at p. __ [118 S.Ct. at p. 2250, 141 L.Ed.2d at p. 623].) The court continued, "The pronouncement of sentence simply does not 'have the qualities of constitutional finality that attend an acquittal.' [Citations.]" (*Id.* at p. __ [118 S.Ct. at p. 2251, 141 L.Ed.2d at pp. 624-625].) The court noted only one exception—capital sentencing—and explained in detail why capital sentencing was qualitatively different from noncapital sentencing, even when the noncapital sentencing procedure resembled a trial. (*Id.* at pp. __-__ [118 S.Ct. at pp. 2251-2253, 141 L.Ed.2d at pp. 625-628].)

The court also addressed Justice Scalia's argument that a sentence enhancement is, for federal constitutional purposes, an element of the offense and therefore conviction of a new crime, not merely a sentencing determination. (*Monge, supra,* 524 U.S. at p. __ [118 S.Ct. at pp. 2250-2251, 141 L.Ed.2d at pp. 624-625].) The court allowed that in an extreme case "fundamental fairness" might require courts to treat an enhancement as an element of the offense, but the court rejected an absolute rule. (*Id.* at p. __ [118 S.Ct. at pp. 2250-2251, 141 L.Ed.2d at p. 624].) The court focused on the amount of the potential increase in the sentence and noted that in *Almendarez-Torres* it had upheld an enhancement authorizing a tenfold increase. (*Id.* at p. __ [118 S.Ct. at p. 2251, 141 L.Ed.2d at p. 624].) Here, the increase in defendant's sentence as a result of the enhancement was from four to nine years, or just over twofold. More importantly, the court nowhere suggested that it would find significant the distinguishing feature of this case—that is, that the application of the sentence enhancement here turned on the facts of the present offense, not the truth of the prior conviction allegation.

In *Almendarez-Torres*, the court discussed in more detail than in *Monge* some of the considerations relevant to determining when an enhancement is,

for federal constitutional purposes, an element of the offense. The case concerned a recidivism statute that increased the maximum applicable penalty from two years to twenty. The court noted that " 'the state legislature's definition of the elements of the offense is usually dispositive.' " (*Almendarez-Torres, supra*, 523 U.S. at p. __ [118 S.Ct. at p. 1230], quoting *McMillan* v. *Pennsylvania* (1986) 477 U.S. 79, 85 [106 S.Ct. 2411, 2415-2416, 91 L.Ed.2d 67].) The court then focused on its prior decision in *McMillan*, in which it upheld a Pennsylvania statute that imposed a mandatory minimum sentence for " 'visibly possess[ing] a firearm.' " (*McMillan, supra*, 477 U.S. at p. 81 [106 S.Ct. at p. 2413].) The court enumerated five aspects of the statute at issue in *McMillan* (*Almendarez-Torres, supra*, 523 U.S. at p. __ [118 S.Ct. at p. 1230]) and found the case before it indistinguishable with respect to each aspect. First, the court noted that recidivism enhancements are "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence" (*ibid.*), and courts had historically treated them as enhancements, not as elements of the offense (*id.* at p. __ [118 S.Ct. at p. 1231]). Second, the court stated that an increase in a permissible maximum sentence (which was the effect of the statute at issue in *Almendarez-Torres*) was indistinguishable from an increase in a mandatory minimum (which was the effect of the statute at issue in *McMillan*). (*Almendarez-Torres, supra*, 523 U.S. at p. __ [118 S.Ct. at p. 1231].) Third, expanding the permissible sentencing range, according to the high court, "does not itself create significantly greater unfairness." (*Ibid.*) Fourth, the enhancement did "not change a pre-existing definition of a well-established crime." (*Id.* at p. __ [118 S.Ct. at p. 1232].) And fifth, the circumstances did not suggest that "Congress intended to 'evade' the Constitution, . . . by . . . 'restructuring' the elements of an offense." (*Ibid.*)

The high court's analysis in *Almendarez-Torres* suggests that the enhancement at issue here is properly characterized as an enhancement for constitutional purposes, not as an element of the offense. As in *Almendarez-Torres*, this case involves a recidivism enhancement. Similarly, a five-year increase in the sentence under section 667, former subdivision (a), is not distinguishable in terms of fairness to defendants from increasing the permissible maximum, nor is it distinguishable from expanding the sentencing range. Rather, the increase, which is relatively modest as compared to the potential tenfold increase at issue in *Almendarez-Torres*, gave defendants the benefit of knowing in advance the precise consequences of their recidivist behavior. In *Monge*, the court considered a similar mandatory increase in the sentence length and found it to be an enhancement for constitutional purposes, not an element of the offense. (*Monge, supra*, 524 U.S. at p. __ [118 S.Ct. at p. 2251, 141 L.Ed.2d at p. 624].) Finally, in enacting section 667, former subdivision (a), the Legislature did "not change a pre-existing definition of a

well-established crime" (*Almendarez-Torres, supra,* 523 U.S. at p. __ [118 S.Ct. at p. 1232]), and the circumstances do not suggest that the Legislature enacted that statute in order to evade the Constitution. Accordingly, none of the considerations that the high court found relevant in *Almendarez-Torres* suggests that the court would reach a different conclusion here, and none of those considerations suggests that the high court would find significant the circumstance that the retrial here turned on characterization of the present offense, not the truth of the prior conviction allegation.

In sum, we find no relevant distinction between this case and *Monge,* and therefore we conclude that *Monge* is controlling. The court did not put defendant in jeopardy twice when it reconsidered whether the sentence enhancement applied, because the enhancement was a sentencing determination to which double jeopardy protections do not apply.

The foregoing analysis has, of course, focused on the federal Constitution, but we see no reason to interpret the state Constitution differently from the federal Constitution in this context. Using words very similar to those in the federal Constitution, the state Constitution provides that "[p]ersons may not twice be put in jeopardy for the same offense . . . ." (Cal. Const., art. I, § 15.) The state Constitution nowhere suggests that this double jeopardy protection applies to sentencing determinations, and, in *People* v. *Monge, supra,* 16 Cal.4th 826, we held that it did not apply to the sentencing determination at issue in that case. (*Id.* at p. 845 (plur. opn. of Chin, J.); see also *id.* at pp. 845-847 (conc. opn. of Brown, J.) [not disagreeing with, or even discussing, the plurality's state constitutional holding].) Defendant tries to distinguish *People* v. *Monge* from this case, arguing again that the sentencing issue here was unavoidably entangled with the facts of the present offense, making reconsideration of the issue inappropriate. We find this point insignificant for purposes of applying the state double jeopardy protection. The essence of our holding in *People* v. *Monge* was that, with respect to retrials of sentence enhancements, the state double jeopardy protection conforms in scope to its federal counterpart. (*Id.* at pp. 844-845 (plur. opn. of Chin, J.); see also *id.* at pp. 845-847 (conc. opn. of Brown, J.) [not disagreeing with plurality on this point].) We see no reason to change this view now. Even if the trial court had reconsidered its factual findings with respect to the present offense, which did not actually occur here, defendant would not have faced a second trial of guilt or innocence, and the prosecution would not have had a second opportunity to obtain a guilty verdict. Rather, the jury had already found defendant guilty, and the court's reconsideration of the facts would have related only to determining the appropriate sentence. We decline to extend the state double jeopardy protection to sentencing determinations such as this one, when state and federal

due process guaranties already sufficiently protect defendants from fundamentally unfair sentencing proceedings, including vindictive reconsideration of sentencing issues. (See *North Carolina* v. *Pearce* (1969) 395 U.S. 711, 725 [89 S.Ct. 2072, 2080-2081, 23 L.Ed.2d 656]; *Williams* v. *New York* (1949) 337 U.S. 241, 252, fn. 18 [69 S.Ct. 1079, 1085, 93 L.Ed. 1337].)

With respect to Justice Scalia's argument in *Monge* that a state must not be allowed to avoid "inconvenient constitutional 'rights'" by using the "gimmick" of sentence enhancements (*Monge, supra*, 524 U.S. at p. __ [118 S.Ct. at p. 2256, 141 L.Ed.2d at p. 631] (dis. opn. of Scalia, J.)), we agree with the *Monge* majority that no manipulations of that kind occurred here and therefore that the state Constitution does not require us to treat the prior conviction enhancement at issue here as a conviction of a new crime, rather than a sentencing determination. The practice at sentencing of taking into account a defendant's prior criminal history is long-standing, and we find nothing inconsistent with fundamental fairness in this practice; on the contrary, it ensures the fair treatment of defendants who have no prior criminal history.

## Conclusion

We conclude that the state and federal double jeopardy protections did not preclude the trial court in this case from reconsidering the applicability of section 667, former subdivision (a).

Defendant also argued on appeal that, contrary to the court's holding in *Moore, supra*, 10 Cal.App.4th at page 1871, specific intent *is* a necessary element of a serious felony under section 1192.7, subdivision (c)(8), as well as section 667, former subdivision (a). Of course, if this argument is correct, then the trial court's determination that the prosecution failed to prove specific intent is relevant. The Court of Appeal did not address this issue and should do so on remand. Nevertheless, if the Court of Appeal concludes that proof of specific intent is necessary, the state and federal double jeopardy protections do not preclude retrial of that issue. We express no opinion as to whether other constitutional or statutory provisions preclude retrial.

We reverse the judgment of the Court of Appeal.

George, C. J., Kennard, J., and Baxter, J., concurred.

**WERDEGAR, J.,** Dissenting.—For the second time in little more than a year (see *People* v. *Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121]), this court ventures into the legal thicket of rules and restrictions

emanating from the state and federal double jeopardy clauses. (U.S. Const., Amend. V; Cal. Const., art. I, § 15.) Unlike in *People* v. *Monge*, however, deciding the double jeopardy issue in this case may be wholly unnecessary, for there exist in this case two statutory questions which, if resolved in defendant's favor, would require reversal of the trial court's decision sustaining the prior serious felony conviction enhancement allegation. (Pen. Code, § 667, former subd. (a), now subd. (a)(1).)[1] By proceeding to address a potentially gratuitous constitutional issue, the majority inexplicably acts in direct violation of the well-established rule of constitutional procedure counseling against just such judicial adventurism. I cannot, therefore, join its opinion; accordingly, I dissent.

I

A jury convicted defendant of, among other crimes, battery with serious bodily injury. (§ 243, subd. (d).) Defendant then waived his right to have the same jury decide whether the alleged prior serious felony conviction was true. (§ 667, former subd. (a), now subd. (a)(1).) At the bifurcated hearing before Judge Finlay, the court found defendant had suffered a qualifying prior conviction. Defendant argued, however, that none of his *present crimes* qualified as a "serious felony" as required by section 667, former subdivision (a), now subdivision (a)(1). Only his battery conviction possibly came within the statutory definition of a "serious felony," for section 1192.7, subdivision (c)(8) defines a serious felony as "any other felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . ."

The parties contested whether, for section 1192.7, subdivision (c)(8) to apply, defendant must have *specifically intended* to cause serious bodily injury. Judge Finlay continued the hearing for a week to obtain briefing on the issue. Returning to the issue the next week, Judge Finlay found specific intent was legally required, the People had failed to prove defendant specifically intended to cause serious bodily injury, and, therefore, the battery was not a "serious felony" as defined in section 1192.7. Accordingly, Judge Finlay found the prior serious felony conviction enhancement allegation was not true.

At the sentencing hearing approximately four weeks later before Judge Rodriguez, the People moved for reconsideration of Judge Finlay's ruling on the prior serious felony conviction enhancement, citing Code of Civil Procedure section 1008. The People contended Judge Finlay had erred in

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

requiring proof of specific intent to cause serious bodily injury and, in support, cited *People* v. *Moore* (1992) 10 Cal.App.4th 1868 [13 Cal.Rptr.2d 713]. This legal authority was available at the time of the bifurcated hearing before Judge Finlay, but the People alleged they did not discover it until after the hearing. Defendant opposed the motion for reconsideration, arguing Code of Civil Procedure section 1008 did not apply in criminal cases, the court lacked jurisdiction to order reconsideration, and that Judge Finlay's ruling constituted an acquittal of the enhancement allegation precluding a rehearing. Judge Rodriguez sent the matter back to Judge Finlay for reconsideration.

At the renewed hearing to determine the truth of the prior serious felony conviction enhancement allegation, Judge Finlay rejected defendant's argument that she lacked jurisdiction to hear the motion for reconsideration. Thereafter, she considered *People* v. *Moore*, *supra*, 10 Cal.App.4th 1868, and reversed herself, this time finding defendant's conviction for battery with serious bodily injury was a qualifying present crime for section 667 purposes despite the lack of evidence he specifically intended to inflict serious bodily injury. Because the judge previously had found defendant suffered a qualifying prior felony conviction, she now found the section 667 enhancement allegation true. At sentencing, Judge Rodriguez imposed a five-year sentence for the enhancement.

On appeal, defendant contended both that Judge Finlay's reconsideration of the enhancement allegation violated the state and federal constitutional prohibition against double jeopardy and that she had erred in finding his conviction for battery with serious bodily injury constituted a "serious felony" pursuant to sections 1192.7 and 667. Because the Court of Appeal decided the constitutional double jeopardy issue in defendant's favor, it determined it need not decide the statutory issue.

## II

The United States Supreme Court long ago recognized several situations in which, for prudential reasons, it would decline to address constitutional issues in cases admittedly within the court's jurisdiction. Justice Louis Brandeis, in his seminal concurring opinion in *Ashwander* v. *Valley Authority* (1936) 297 U.S. 288, 346-348 [56 S.Ct. 466, 482-484, 80 L.Ed. 688], outlined many of these situations, and one is particularly pertinent here: "The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. This rule has found most varied

application. *Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."* (*Id.* at p. 347 [56 S.Ct. at p. 483] (conc. opn. of Brandeis, J.), italics added.)

Regarding the rule that "[c]ourts do not review issues, especially constitutional issues, until they have to" (*Anti-Fascist Committee* v. *McGrath* (1951) 341 U.S. 123, 154-155 [71 S.Ct. 624, 639-640, 95 L.Ed. 817] (conc. opn. of Frankfurter, J.)), the Supreme Court explained: "[T]his practice reflects the tradition that courts, having final power, can exercise it most wisely by restricting themselves to situations in which decision is necessary. In part, it is founded on the practical wisdom of not coming prematurely or needlessly in conflict with the executive or legislature." (*Id.* at p. 155 [71 S.Ct. at p. 640].) The high court has characterized this rule as "[a] fundamental and longstanding principle of judicial restraint . . . ." (*Lyng* v. *Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 [108 S.Ct. 1319, 1323, 99 L.Ed.2d 534] (*Lyng*); see also *Three Affiliated Tribes* v. *Wold Engineering* (1984) 467 U.S. 138, 157 [104 S.Ct. 2267, 2278-2279, 81 L.Ed.2d 113] [characterizing the rule as a "fundamental" one "of judicial restraint"].)

More specifically, the United States Supreme Court consistently follows the rule that, where resolution of either a constitutional or a statutory claim could entitle a litigant to relief, the court should first address the statutory claim. (*Lyng, supra,* 485 U.S. at p. 446 [108 S.Ct. at pp. 1323-1324]; *Massachusetts* v. *Westcott* (1977) 431 U.S. 322, 323 [97 S.Ct. 1755, 1755-1756, 52 L.Ed.2d 349] (*per curiam*); *Hagans* v. *Lavine* (1974) 415 U.S. 528, 549 [94 S.Ct. 1372, 1385, 39 L.Ed.2d 577]; *Dandridge* v. *Williams* (1970) 397 U.S. 471, 475-476 [90 S.Ct. 1153, 1156-1157, 25 L.Ed.2d 491]; see also *Whalen* v. *United States* (1980) 445 U.S. 684, 702 [100 S.Ct. 1432, 1443, 63 L.Ed.2d 715] (dis. opn. of Rehnquist, J.) ["Axiomatically, we are obligated to avoid constitutional rulings where a statutory ruling would suffice."].)

This court follows the same rule. (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 230-231 [45 Cal.Rptr.2d 207, 902 P.2d 225] (*Guardino*); *College Hospital Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 721 [34 Cal.Rptr.2d 898, 882 P.2d 894]; *In re Michael G.* (1988) 44 Cal.3d 283, 295 [243 Cal.Rptr. 224, 747 P.2d 1152]; *People* v. *Green* (1980) 27 Cal.3d 1, 50 [164 Cal.Rptr. 1, 609 P.2d 468]; *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65-66 [195 P.2d 1].) The rule requiring that a court address a potentially dispositive statutory issue before turning to a constitutional one "is itself an application of the larger concept of judicial self-restraint, succinctly stated in the rule that 'we do not reach

constitutional questions unless absolutely required to do so to dispose of the matter before us.' " (*Guardino, supra* at p. 230, quoting *People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000]; see also *People* v. *Reyes* (1998) 19 Cal.4th 229, 250 [78 Cal.Rptr.2d 295, 961 P.2d 984] (conc. and dis. opn. of Werdegar, J.) [because reasonable suspicion existed on the facts, court should not decide whether Fourth Amendment permits warrantless search of adult parolee absent reasonable suspicion]; *People* v. *Birks* (1998) 19 Cal.4th 108, 139 [77 Cal.Rptr.2d 848, 960 P.2d 1073] (conc. opn. of Werdegar, J.) [declining to express an opinion on majority's gratuitous discussion of the separation of powers question]; *People* v. *Bennett* (1998) 17 Cal.4th 373, 393 [70 Cal.Rptr.2d 850, 949 P.2d 947] (conc. opn. of Werdegar, J.) [opining that "[p]rinciples of judicial restraint counsel that we not reach out to decide gratuitously constitutional questions"].) Then Associate Justice George rightly described the rule as a "settled maxim" of constitutional law. (*Rider* v. *County of San Diego* (1991) 1 Cal.4th 1, 17 [2 Cal.Rptr.2d 490, 820 P.2d 1000] (conc. opn. of George, J.).)

The majority, as did the Court of Appeal below, ignores this venerable line of precedent to reach out unnecessarily to decide a difficult constitutional double jeopardy question. Having done so, only then does the majority recognize the existence in the case of a potentially dispositive nonconstitutional issue. (Maj. opn., *ante,* at p. 843.) Thus, the majority directs the Court of Appeal to address, on remand, whether *People* v. *Moore, supra,* 10 Cal.App.4th at page 1871, on which the trial court relied, is correct, i.e., whether specific intent to cause serious bodily injury is indeed a requirement for a battery to qualify as a serious felony under section 1192.7, subdivision (c)(8). The majority neglects, moreover, to mention a second potentially dispositive nonconstitutional issue, that is, whether, irrespective of the double jeopardy issue, the trial court had jurisdiction in this case to reconsider its initial decision on the applicability of the enhancement.

Of course, defendant, on remand to the Court of Appeal, may prevail on either or both of these nonconstitutional questions. If so, the majority's analysis today, refuting defendant's contention that he was denied his constitutional rights under the state and federal double jeopardy clauses, would be rendered obiter dictum, for the final ruling on the legal propriety of the section 667 enhancement would have been decided on grounds other than those propounded by the majority. The majority's decision would, in essence, stand as an improper advisory opinion. It is to avoid just this type of outcome that courts historically have avoided unnecessary decisions on questions of constitutional law.

## III

Rather than deciding any issue in this case, I would invoke this court's powers under California Rules of Court, rule 29.4(e)[2] and transfer the case to the Court of Appeal with directions to address—if properly preserved for appellate review—the two identified nonconstitutional issues. If the Court of Appeal were to rule against defendant on those issues, it would then be proper for it to address the double jeopardy issue in the case in light of our decision in *People* v. *Monge, supra,* 16 Cal.4th 826, as well as the high court's decision in *Monge* v. *California* (1998) 524 U.S. 721 [118 S.Ct. 2246, 141 L.Ed.2d 615]. Because the majority declines to follow the "fundamental and longstanding principle of judicial restraint" (*Lyng, supra,* 485 U.S. at p. 445 [108 S.Ct. at p. 1323]) requiring resolution of statutory issues before constitutional ones, I cannot join its opinion and respectfully dissent.[3]

Mosk, J., concurred.

**BROWN, J.,** Dissenting.—For the reasons set forth in Justice Werdegar's dissenting opinion, I also decline to join the majority's opinion and respectfully dissent. To the extent any constitutional issues may be implicated in this case, *Monge* v. *California* (1998) 524 U.S. 721 [118 S.Ct. 2246, 141 L.Ed.2d 615] (*Monge II*) and *People* v. *Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121] (*Monge I*) are sufficient to resolve them. For now, we need venture no further.

Additionally, I write separately to disclaim the majority's blatant obiter dictum that no double jeopardy implications would attend the trial court's reconsideration of factual findings. (Maj. opn., *ante,* at p. 842; see also *id.* at p. 843.) " 'It is the general rule that the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts.' [Citations.]" (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406].) As the majority perforce concedes, reconsideration of factual findings "did not actually occur here . . . ." (Maj. opn., *ante,* at p. 842.) What did actually occur here is that the trial court redetermined the governing *legal standard* for imposing increased punishment for a prior serious felony conviction. (Pen. Code, § 667, former subd. (a), now subd. (a)(1).) A fortiori, this case cannot carry the majority's attempt to extend the reasoning of *Monge II, supra,* 524 U.S. 721 [118 S.Ct. 2246], to reconsideration of factual findings.

---

[2]"After granting review of a decision of a Court of Appeal, the Supreme Court may transfer the cause to a Court of Appeal with instructions to conduct such further proceedings as the Supreme Court deems necessary." (Cal. Rules of Court, rule 29.4(e).)

[3]Because I believe it is improper for this court to address the double jeopardy question under the state or federal Constitutions, I express no opinion on either issue.

Like *Monge I* and *Monge II*, the enhancement allegation here is a typical recidivist provision, which is predicated on "a fact objectively ascertainable on the basis of readily available evidence. Either a defendant has [a prior serious felony conviction], or he does not. Subjecting him to a second proceeding at which the State has the opportunity to show [that] conviction[] is not unfair and will enhance the accuracy of the proceeding by ensuring that the determination is made on the basis of competent evidence." (*Caspari v. Bohlen* (1994) 510 U.S. 383, 396 [114 S.Ct. 948, 956-957, 127 L.Ed.2d 236].) Thus, even though a defendant is statutorily entitled to a jury trial and the prosecution has an evidentiary burden, "[w]hen the prosecutor fails to prove a prior conviction allegation, a retrial does not require a fact finder to reevaluate the evidence underlying the substantive offense. Under these circumstances a retrial does not subject a defendant to the risk of repeated prosecution within the meaning of the double jeopardy clause." (*Monge I, supra,* 16 Cal.4th at p. 847 (conc. opn. of Brown, J.).)

We have yet to consider, however, whether the same rationale holds true for fact-bound enhancement allegations that a jury determines at trial based on facts inextricably bound with the manner in which the substantive offense was committed. (E.g., Pen. Code, §§ 12022.5, former subd. (a), now subd. (a)(1) [personal use of firearm], 12022.7, subd. (a) [personal infliction of great bodily injury].) In my view, the proper application of double jeopardy principles in this latter situation is far from clear or certain under either the federal or state Constitution. In *Monge II*, the Supreme Court distinguished *Bullington v. Missouri* (1981) 451 U.S. 430 [101 S.Ct. 1852, 68 L.Ed.2d 270] as a capital sentencing case. Nevertheless, it did not state the holding in definitively broad terms, saying only "that the Double Jeopardy Clause does not preclude retrial on a *prior conviction allegation* in the noncapital sentencing context." (*Monge II, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2253], italics added; see also *Graham v. West Virginia* (1912) 224 U.S. 616, 631 [32 S.Ct. 583, 588, 56 L.Ed. 917] [separate indictment alleging only recidivist status for increased punishment does not violate double jeopardy]; cf. *Almendarez-Torres v. U.S.* (1998) 523 U.S. 224 [118 S.Ct. 1219, 1230-1231, 140 L.Ed.2d 350] [no constitutional violation for not including recidivist allegation in indictment].)

Moreover, the high court acknowledged in *Monge II*, as it has in other contexts, that there are constitutional limits to the state's power to define crimes and prescribe penalties. "One could imagine circumstances in which fundamental fairness would require that a particular fact be treated as an element of the offense" rather than as a sentencing factor and hence would be subject to double jeopardy. (*Monge II, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2250]; cf. *Almendarez-Torres v. U.S., supra,* 523 U.S. at p. __ [118 S.Ct. at p. 1230]; *McMillan v. Pennsylvania* (1986) 477 U.S. 79, 86 [106

S.Ct. 2411, 2416, 91 L.Ed.2d 67].) The court has also allowed that certain of its decisions, taken together, might be read "for the broad proposition that *sometimes* the Constitution does require (though sometimes it does not require) the State to treat a sentencing factor as an element." (*Almendarez-Torres* v. *U.S., supra,* 523 U.S. at p. __ [118 S.Ct. at p. 1230].) Because the double jeopardy clause preserves and protects interests distinct from those traditionally associated with a criminal proceeding, such as the presumption of innocence and the right to jury trial, its application to fact-bound enhancements may vary accordingly.

With respect to the state constitutional protection against double jeopardy, as noted, *Monge I, supra,* 16 Cal.4th at pages 843-845, construed California's double jeopardy clause only in the context of a recidivist enhancement, and should not be read more broadly. More importantly, this court has a long history of independent interpretation even as it has sought guidance from high court precedents. (See generally, *People* v. *Superior Court (Harris)* (1990) 217 Cal.App.3d 1332, 1335-1337 [266 Cal.Rptr. 563].) As we explained in *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 716 [87 Cal.Rptr. 361, 470 P.2d 345], "*Benton* [v. *Maryland* (1969) 395 U.S. 784 [89 S.Ct. 2056, 23 L.Ed.2d 707]] requires only that the states accord their citizens at least as much protection against double jeopardy as is provided under the Fifth Amendment of the United States Constitution; it does not forbid a state from according a *greater* degree of such protection. (See, e.g., *People* v. *Henderson* (1963) 60 Cal.2d 482, 496-497 [35 Cal.Rptr. 77, 386 P.2d 677].)" (Fn. omitted; see *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086]; *People* v. *Belcher* (1974) 11 Cal.3d 91, 97 [113 Cal.Rptr. 1, 520 P.2d 385].) With respect to fact-bound enhancement allegations, it appears this court has previously accepted the proposition that a jury's not-true finding precludes retrial as double jeopardy. (See *People* v. *Santamaria* (1994) 8 Cal.4th 903, 910 [35 Cal.Rptr.2d 624, 884 P.2d 81]; *People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 78, fn. 22 [2 Cal.Rptr.2d 389, 820 P.2d 613]; *People* v. *Pettaway* (1988) 206 Cal.App.3d 1312, 1331-1332 [254 Cal.Rptr. 436]; but see *Monge I, supra,* 16 Cal.4th at p. 843.) Until a case presents the issue directly, we cannot foreclose the possibility that was a correct determination. Since this is not such a case, the question remains open.