[No. A056382. First Dist., Div. Four. July 31, 1992.]

In re CHESTER JOHNSON on Habeas Corpus.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Kenneth C. Young, Assistant Attorney General, Morris Lenk and Paul D. Gifford, Deputy Attorneys General, for Appellants.

Steven Fama for Respondent.

## OPINION

**POCHÉ, Acting P. J.**—Penal Code section 3041.1[1] requires the full Board of Prison Terms[2] sitting in bank to review a grant of parole if the Governor makes such a request "[u]p to 90 days prior to a scheduled parole release

---

[1] Section 3041.1 provides: "Up to 90 days prior to a scheduled parole release date, the Governor shall have the power to request review of any decision concerning the grant or denial of parole to any prisoner in a state prison. The Governor shall state the reason or reasons for the request, and whether the request is based on a public safety concern, a concern that the gravity of current or past convicted offenses may have been given inadequate consideration, or on other factors. When a request has been made, the full board, sitting en banc, shall review the parole decision. In case of a review, a vote in favor of parole by a majority of the current board members shall be required to grant parole to any prisoner. In carrying out any review, the board shall comply with the provisions of this chapter."

Unless otherwise noted all future statutory references are to the Penal Code.

[2] The Board of Prison Terms, and its predecessors, the Adult Authority and the Community Release Board, are collectively referred to in this opinion as the Board.

date." Purporting to act pursuant to this authority, the Governor requested the Board to review a grant of parole to petitioner and respondent, Chester Johnson, but his request was filed less than 90 days from Johnson's scheduled parole release date. The trial court concluded that because the Governor's request was untimely under section 3041.1, the Board lacked power to review Johnson's grant of parole and it issued a writ of habeas corpus directing appellants[3] to immediately release Johnson. Concluding that the Governor's untimely action did not divest the Board of the power it always possessed to reconsider and set aside its administrative decision to grant Johnson parole, we reverse.

## I.

Johnson was convicted of first degree murder in both Los Angeles and Alameda Counties, and was imprisoned for those crimes in early 1970. His initial sentence of death was subsequently modified to life imprisonment.

After a number of hearings, the Board found in December of 1981 that Johnson was suitable for parole.[4] As required by law, the Board calculated a net term of imprisonment (318 months) and set an estimated parole release date of October 17, 1994. As a result of periodic progress hearings held over the course of the next 10 years, Johnson's parole release date was advanced to December 17, 1991. Another progress hearing held May 22, 1991, purported to advance the release date by two months to October 17. While there is some dispute about whether that progress hearing decision became final and about whether the October 17, 1991, parole release date became effective, for purposes of this appeal, it is assumed that (a) the progress hearing decision did become final, and (b) Johnson's parole release date was advanced to October 17. (See fn. 6, *post.*)

By letter dated August 4, 1991 (i.e., 74 days before Johnson's parole release date), the Governor requested the Board pursuant to section 3041.1 to conduct an in bank review of Johnson's grant of parole. The Governor gave two reasons for his request: (1) public safety, and (2) the gravity of the offenses.

On August 13, the Board, sitting in bank "[p]ursuant to section 3041.1," reviewed the earlier decision granting parole. In its written order, a majority

---

[3]Appellants are: Daniel Vasquez, Warden of San Quentin, James Gomez, Director of the Department of Corrections, and John Gillis, Chairman of the Board of Prison Terms.

[4]The three-member panel of the Board split on the decision to grant a parole release. The majority concluded: "Although the commitment offenses were senseless acts and the panel is aware of the seriousness, when viewed in relation to prisoner's apparent maturation; expressions of remorse, overall positive institutional adjustment; development of marketable skills; supportive Psychiatric Reports; and family support, panel finds that prisoner has demonstrated an ability to function within the law upon release."

of the Board "determined that the grant of parole and current release dates . . . may not be appropriate, and accordingly, improvident."[5] The Board scheduled for November 20 a rescission hearing for purposes of determining whether Johnson would pose "an unreasonable risk to public safety if released to parole."

On October 17, Johnson filed an administrative appeal challenging the decision of the Board to confine him beyond his scheduled release date. The Board denied the appeal on October 23.[6]

Johnson then filed a writ of habeas corpus challenging the decision to detain him pending the November 20 rescission hearing. Johnson also sought immediate release from prison. The trial court granted the motion for immediate release and ultimately granted Johnson the relief he sought on his

---

[5]The Board gave the following reasons for its decision ordering a rescission hearing:

"1. The prisoner's clinical evaluation from September 1981 stated in part: 'Violence potential while in the free community is estimated to have been exceedingly greater than average man on the street, especially when under the influence of intoxicants. *It is presently estimated to be unpredictable.*' [Italics added.] The Board finds that this evaluation raises questions about the decision to grant parole to this inmate, and leads the Board to believe that the decision to grant parole may have been improvident.

"2. The prisoner held the victim at gunpoint while the crime partner drove from the scene. The prisoner shot the victim as the victim pleaded for his life, stating to the prisoner that he would give him all his money. The prisoner shot the victim again and finally fired a third shot as they drove near the freeway. They drove to a park where they dragged the victim's body into the brush in a desolate area. The Board expresses concern that the prisoner may not, at the time of being granted parole, have understood the nature of his crime.

"3. The prisoner received a California Department of Corrections disciplinary (CDC 115) one year prior to receiving a finding of suitability for parole. He was cited in September 1980 for contraband (money). The Board finds that the prisoner's conduct raises questions about the decision to grant parole and leads the Board to believe that the decision to grant parole may have been improvident.

"4. The Board has read and considered the concerns expressed by Governor Pete Wilson in a document entitled Request for En Banc Review, pursuant to Penal Code § 3041.1, dated August 4, 1991. After careful review of the information contained within the document, the Board chooses to adopt that document as additional basis for ordering a Rescission Hearing to more fully consider the appropriateness of a grant of parole in the case of this inmate. Accordingly, the Board incorporates by reference the aforementioned document."

[6]In denying the appeal, the Board concluded that the May 22 progress hearing decision advancing Johnson's parole release date by two months never became effective so that Johnson's parole release date remained December 17, 1991. Under the Board's reasoning, the Governor's letter requesting the Board to reconsider the grant of parole met the 90-day deadline of section 3041.1. The Board reiterated that stance to the trial court in the instant habeas proceeding. The court apparently rejected the argument in that it found, (a) Johnson's parole release date was October 17, 1991, and (b) the Governor's letter of August 4, 1991, did not meet the 90-day requirement of section 3041.1.

On appeal appellants' tactics have changed. Now appellants assume for purposes of argument that Johnson's effective parole release date was October 17. In light of this concession, this court need not decide whether the Board is correctly interpreting its rules governing the finality of progress hearing decisions.

habeas petition. In so doing, the trial court concluded that: (1) the Governor did not make a timely request under section 3041.1 for a review by the Board of Johnson's grant of parole; and, (2) the record did not support rescission of Johnson's parole. This timely appeal followed.

## II.

In *In re Fain* (1976) 65 Cal.App.3d 376 [135 Cal.Rptr. 543] (*Fain I*), this court examined the power of the Board to reconsider its administrative action granting parole and setting a release date.

We started with the proposition that the actions of the Board, including the granting of parole and the setting of a release date are purely administrative decisions, and any administrative agency has the inherent power to reconsider "unless reconsideration is precluded by law." (*Fain I, supra,* 65 Cal.App.3d 376, 389.) Noting a prison inmate has no vested right in his prospective liberty on a parole release date (at p. 390, citing *In re McLain* (1960) 55 Cal.2d 78, 87 [9 Cal.Rptr. 824, 357 P.2d 1080]), we found no constitutional prohibition to the reconsideration of the grant of parole. Nor were we able to locate any legislatively imposed prohibition of reconsideration by the Board of a grant of parole. (*Fain I, supra,* 65 Cal.App.3d at pp. 390-391.) We thus concluded that the Board, as an administrative agency, has the inherent jurisdiction to reconsider its administrative decision to grant parole. (At p. 391.)

We next turned to the Board's power to rescind an unexecuted grant of parole. We noted that the Board was empowered to rescind for cause; that whether cause exists to rescind parole is a question for the Board to determine in its very broad and " 'almost unlimited' " discretion; and that while broad, the Board's discretion is not absolute but is subject to the prisoner's right to procedural due process. (*Fain I, supra,* 65 Cal.App.3d at pp. 391-394; accord, *In re Powell* (1988) 45 Cal.3d 894, 910-912 [248 Cal.Rptr. 431, 755 P.2d 881].) ▮▮▮ Further, we explained that the Board's decision must have a factual basis; it cannot be based on whim or rumor. (*Fain I, supra,* 65 Cal.App.3d at p. 394; accord, *In re Powell, supra,* 45 Cal.3d at p. 904.)[7]

## III.

▮ Under our holding in *Fain I*, the Board had the inherent power to reconsider its grant of parole to Johnson and to rescind for cause that grant

---

[7]Substantive due process requires that there be some evidence to support the decision to rescind parole (*In re Powell, supra,* 45 Cal.3d at p. 904.)

of parole. However, the Board announced that it was acting "pursuant to section 3041.1," that is, as a result of the Governor's request for reconsideration. Since now all agree that the Governor's request did not meet that section's 90-day requirement, the question is whether that untimeliness rendered the Board's decision to review Johnson's grant of parole "unlawful." The only answer can be no.

In enacting section 3041.1, the Legislature was not attempting to vest the Board with the power to reconsider a grant of parole: as we have made clear, the Board already possessed that power (see *Fain I*, *supra*, 65 Cal.App.3d 376, 390-391). Instead, the Legislature's goal was to give the Governor the power to force the Board into the reconsideration process. Prior to the enactment of section 3041.1, a Governor had the same right as any other person to request the Board to reconsider a grant of parole and the Board had unfettered discretion to act upon or to disregard such a request. As a result of section 3041.1, the Governor is no longer a casual petitioner and observer of the process: now "the full board, sitting en banc" must "review the parole decision" if the Governor meets the statutory requirements.

But where as here the Governor fails to meet the statutory requirements, the Board does not lose its power to reconsider. Only the Governor has lost power and that is the power section 3041.1 holds out to a Governor who meets its requirements. The only thing the Board has lost is the statutory obligation to reconsider, not the power to do so.

Thus, when the Board in the instant case voted to review Johnson's grant of parole, it was not exercising any power that section 3041.1 gave it because section 3041.1 confers no power whatsoever upon the Board. Rather, the Board was exercising its power as an administrative agency to reconsider an administrative decision to grant parole. The Board's action was not rendered unlawful either by the failure of the Governor to satisfy section 3041.1's time line or by the fact that the Board acted on the basis of a petition that was untimely under that section.

■    Johnson also attempts to read section 3041.1 as imposing a temporal limit on the power of the Board to reconsider a grant of parole: the Board must act before 90 days of the inmate's parole release date. Again, Johnson is missing the thrust of the statute. The goal of the Legislature was not to alter or diminish the Board's power to reconsider, but to give the Governor power to force the Board to reconsider a grant of parole. Under the explicit language of the section, filing a request for review of a grant of parole within the 90-day period is a condition imposed only on the Governor's power to require in bank review, not upon any power of the Board. In other words, the 90-day requirement governs and empowers the Governor, not the Board.

For these reasons, we conclude that the untimeliness of the Governor's section 3041.1 request did not divest the Board of its power to reconsider its administrative decision to grant Johnson parole. The trial court erred in concluding that it did.

## IV.

The trial court also determined that there was insufficient evidence in the record to support rescission of Johnson's parole. Whether there is cause for rescinding Johnson's parole remains to be decided by the Board, for the scheduled rescission hearing has yet to occur. As this court noted in the identical procedural context in *Fain I*, it is premature for the trial court to undertake to decide the sufficiency of the evidence to warrant rescission.

*Fain I* makes it very clear: "Since the [Board]'s discretion in parole matters is 'great,' 'absolute,' and 'almost unlimited,' . . . it is sufficiently broad to include the apprehension and correction of a mistake made by the agency in granting a parole. [Citation.] This means that 'cause' for the rescission of Fain's parole may exist if the authority reasonably determines, in its discretion, that the parole was 'improvidently granted' [citation] under the circumstances which appeared [when parole was granted] and which may have appeared since. We do not prejudge that question, and the trial court should not have undertaken to decide it. It will be resolved by [the Board], whose answer to it may be subject to judicial review when it is finally reached." (65 Cal.App.3d at p. 394.)

That rule applies here. It was premature for the trial court to decide whether or not there was sufficient evidence to warrant rescission of Johnson's parole. If, as and when the Board rescinds parole, that determination will be subject to judicial review.

## V.

Johnson argues that the superior court's order granting the writ should be affirmed for a different reason: that application of section 3041.1 to a prisoner who committed his crimes prior to its effective date violates the prohibition against ex post facto laws. (U.S. Const., art. I, §§ 9, 10; Cal. Const., art. I, § 9.) Because we have upheld the Board's decision on the basis of its inherent power, we need not decide the complex ex post facto argument advanced by Johnson here.[8]

For the same reason, we do not decide whether the Board's response to the Governor's letter violated the procedural requirements of section 3041.1.

---

[8] An identical challenge to a constitutional provision and its statutory implementation giving the Governor the power to "affirm, modify or reverse" a parole decision of the Board with

## VI.

■ Johnson suggests that if we reverse the trial court's order it would be unfair to require him to return to prison and be subject to a formal rescission hearing since he has been released on parole since October of last year. In his view, we should follow the lead of the California Supreme Court in *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328], and order that he be allowed to remain on parole. This case is not *Tanner*.

In *Tanner*, the defendant had been placed on probation, served a year in county jail, and otherwise complied with the terms of his probation by the time the high court decided on appeal that the trial court had erred by striking a gun use enhancement which carried a mandatory prison term. Because of the uncertainty in the law, and because Tanner had fully complied with the terms of his probation, the high court found it "unfair to require Mr. Tanner to now serve a second term for his criminal act." (24 Cal.3d at p. 521.) Similarly in *People* v. *Holt* (1985) 163 Cal.App.3d 727 [209 Cal.Rptr. 643], the defendant was erroneously placed on probation and had successfully completed one year in county jail, returned to the community, and was performing successfully by the time the Court of Appeal found that he should have been sentenced to state prison. Noting that after the award of credits, the defendant would have to serve less than a year in state prison, the court concluded that it would constitute cruel or usual punishment to subject him to a "second incarceration." (*Id.* at p. 734.)

As others have noticed, *Tanner* and *Holt* are the exceptions not the rule, and those holdings stem from peculiar fact patterns in which the defendants had fully completed their probationary terms. (*People* v. *Almodovar* (1987) 190 Cal.App.3d 732, 749 [235 Cal.Rptr. 616]; *People* v. *Gonzales* (1979) 96 Cal.App.3d 725, 727 [158 Cal.Rptr. 205].) For example, in *People* v. *Warner* (1978) 20 Cal.3d 678 [143 Cal.Rptr. 885, 574 P.2d 1237], the high court did not hesitate to allow a probationer to be resentenced even though he had successfully served two years on probation. (*Id.* at p. 689.)

But even if *Tanner* and *Holt* were read to be the rule, that rule would have neither factual nor procedural application to the case at hand. This is not an appeal from a judgment imposing probation but from the granting of a writ of habeas corpus releasing a life prisoner prematurely on parole. Whereas in *Tanner* and *Holt* there was absolute certainty that if the judgment were reversed the defendant would be imprisoned for an identifiable term, here it is not known whether Johnson's parole will be rescinded. Should the Board

respect to indeterminate life prisoners (Cal. Const., art. V, § 8; § 3041.2) was rejected by the Third District in *In re Arafiles* (1992) 6 Cal.App.4th 1467, 1481-1488 [8 Cal.Rptr.2d 492].

decide to rescind Johnson's parole, Johnson may then institute new habeas corpus proceedings challenging that commitment on grounds of cruel or usual punishment.

The judgment is reversed.

Perley, J., and Reardon, J., concurred.

A petition for a rehearing was denied August 26, 1992, and petitioner's application for review by the Supreme Court was denied November 12, 1992.