[No. S097715. July 25, 2002.]

THE PEOPLE, Plaintiff and Appellant, v.
RUSSELL HUBERT STATUM, Defendant and Respondent.

## COUNSEL

Gil Garcetti and Steve Cooley, District Attorneys, George M. Palmer, Brentford J. Ferreira, Patrick D. Moran and Phyllis C. Asayama, Deputy District Attorneys, for Plaintiff and Appellant.

Dennis A. Fischer, under appointment by the Supreme Court; and R. Charles Johnson, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**BAXTER, J.**—Defendant Russell Hubert Statum was convicted of violating Vehicle Code section 2800.2, an alternative felony/misdemeanor offense. An alternative felony/misdemeanor, also known as a "wobbler," is deemed a felony unless charged as a misdemeanor by the People or reduced to a misdemeanor by the sentencing court under Penal Code section 17, subdivision (b). (*In re Jorge M.* (2000) 23 Cal.4th 866, 880 [98 Cal.Rptr.2d 466, 4 P.3d 297].) The sentencing court here, over the People's objections, reduced the conviction to a misdemeanor and imposed a county jail term. The People appealed, asserting that the superior court had abused its discretion. May the People appeal the superior court's decision to sentence defendant as a misdemeanant? We find that the appeal is authorized by Penal Code section 1238, subdivision (a)(6),[1] and therefore reverse the Court of Appeal, which had dismissed the People's appeal.

I

### BACKGROUND

The evidence at the preliminary hearing showed the following: Around 7:00 p.m. on September 26, 1999, an unidentified woman flagged down Los Angeles County Deputy Sheriff Joseph Garrida in the area of 103d Street and Western Avenue to report that her purse had been stolen. She pointed the officer to defendant and the beige 1984 Buick Skylark he was driving. The car was only 30 feet away. Garrida yelled at defendant to stop, but defendant instead "blew" through a red light and sped away. Sounding his siren and flashing his lights, Garrida pursued defendant for six or seven miles. Defendant proceeded in a very erratic and unsafe manner. He drove at least 40 miles per hour on residential streets, between 40 and 45 miles per hour in the alleys, and 65 miles per hour on Western Avenue. He nearly

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

collided with a minor who was crossing a residential street and with numerous vehicles, including another patrol unit participating in the pursuit. He ran red lights and stop signs. He bumped into a curbside and almost went onto the front lawn of a residence. The chase ended when defendant crashed into a vehicle that was parked along a residential street. Defendant exited the car and ran. He was caught while trying to jump over a fence.

The Los Angeles County District Attorney charged defendant with reckless driving while fleeing a police officer "in violation of Vehicle Code section 2800.2(a), a Felony" and alleged six prior strike convictions—first degree burglary, forcible rape, oral copulation with a minor, attempted first degree burglary, and two robberies—and two prior prison term enhancements. On the date set for trial, defendant entered an "open plea" to "a violation of Vehicle Code section 2800.2(a), a felony" based on the superior court's indication of an intent to strike five of the six priors and sentence him to eight years in prison.

The parties convened in chambers prior to the sentencing hearing. Although the sentencing judge had been "expecting to conclude the plea bargain that was originally entertained," he was now "very seriously leaning towards exercising the discretion I have under section 17 and making this a misdemeanor and sentencing appropriately"—even though the defense had not made a motion to reduce the offense to a misdemeanor at the preliminary hearing or at any other time. The apparent basis for the court's change of heart was its assessment of "the actual driving" by defendant, without reference to the officer's "conjectural" and "conclusionary" statements and without consideration of "what the man's record is." (Cf. *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 979 [60 Cal.Rptr.2d 93, 928 P.2d 1171] [decision to reduce a wobbler to a misdemeanor "should reflect a thoughtful and conscientious assessment of all relevant factors including the defendant's criminal history"].) In open court, and over the People's objections, the judge announced he was "going to reduce the charge to a misdemeanor." The court sentenced defendant to 365 days in the county jail, awarded credits of 355 days, and imposed a $500 restitution fine.

The People appealed, contending that the sentencing court had abused its discretion in reducing the conviction to a misdemeanor, but the appeal was dismissed. The Court of Appeal rejected the People's reliance on section 1238, subdivision (a)(10), which authorizes the People to appeal from the imposition of "an unlawful sentence," defined as "a sentence not authorized by law" or "a sentence based upon an unlawful order of the court which strikes or otherwise modifies the effect of an enhancement or prior conviction." "Here, the People do not and cannot claim that a misdemeanor

sentence is never authorized for a violation of Vehicle Code section 2800.2, subdivision (a) or that a trial court's order sentencing a wobbler as a misdemeanor is always unlawful when the defendant has suffered prior serious or violent felony convictions within the meaning of the three strikes law. . . . [¶] Rather, the People contend that the trial court 'refused' to consider all relevant factors, including respondent's extensive criminal history, in determining respondent's sentence. This, however, is simply a claim that the trial court abused its discretion in sentencing respondent's Vehicle Code violation as a misdemeanor under the facts of this case. It does not present a pure question of law." In a petition for rehearing, the People for the first time sought to justify their appeal under section 1238, subdivision (a)(6) (hereafter section 1238(a)(6)). The petition was denied without comment.

We granted review and now reverse.

## II

This is not the first time we have considered whether the People may obtain appellate review of a sentencing court's exercise of discretion under section 17, subdivision (b) (hereafter section 17(b)).

In *People v. Superior Court (Alvarez)*, *supra*, 14 Cal.4th 968, we addressed the People's petition for writ of mandate, authorized by section 1238, subdivision (d), to review a grant of probation and orders underlying the grant of probation when the court suspended imposition of sentence and granted misdemeanor probation for a wobbler offense. Our discussion included reference to well-established canons governing the exercise of judicial discretion: " '[t]he courts have never ascribed to judicial discretion a potential without restraint.' . . . '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*People v. Superior Court (Alvarez)*, *supra*, 14 Cal.4th at p. 977.) We therefore "reject[ed] defendant's argument that a trial court's exercise of discretion under the authority of section 17(b) should be unreviewable" (*id.* at p. 976) and found "no authority immunizing a trial court's discretionary decisionmaking from some level of review, however deferential" (*id.* at p. 977). On this point, we cited with approval *People v. Dent* (1995) 38 Cal.App.4th 1726 [45 Cal.Rptr.2d 746], which sustained the People's appeal of the sentencing court's exercise of section 17(b) discretion when (as in the case here) probation was not granted. (*People v. Superior Court (Alvarez)*, *supra*, 14 Cal.4th at p. 977.)

In *People v. Douglas* (1999) 20 Cal.4th 85 [82 Cal.Rptr.2d 816, 972 P.2d 151] (*Douglas*), we permitted the People to appeal when the sentencing court

reduced a wobbler to a misdemeanor after suspending imposition of judgment and granting probation. We relied on section 1238, subdivision (a)(5), which authorizes an appeal from an " 'order made after judgment, affecting the substantial rights of the people.' " (*Douglas*, at p. 90.) Although not part of our holding, we did observe that the reduction of a wobbler to a misdemeanor even without a grant of probation "has also been held appealable by the People," citing *People v. Trausch* (1995) 36 Cal.App.4th 1239, 1243, footnote 5 [42 Cal.Rptr.2d 836]. (*Douglas, supra,* 20 Cal.4th at p. 92, fn. 7.)

The absence of a grant of probation distinguishes this case from *Douglas* and from *People v. Superior Court* (*Alvarez*). Thus, as the People concede, neither subdivision (a)(5) nor subdivision (d) of section 1238 would authorize review by appeal or by writ of the superior court's decision here to sentence defendant to 365 days in jail. Although dicta in both cases assumed that appellate review was nonetheless available in this circumstance, we are also mindful that "[t]he People have no right of appeal except as provided by statute." (*Douglas, supra,* 20 Cal.4th at p. 89.) ▮▮ Having reviewed the statutory scheme, we conclude that the statutory authority for the People's appeal in this case can be found in section 1238(a)(6).

## A

Section 1238(a)(6) authorizes the People to take an appeal from "[a]n order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed or modifying the offense to a lesser offense." The People contend, persuasively, that the superior court's reduction of defendant's felony conviction to a misdemeanor was an "order modifying the verdict . . . by . . . modifying the offense to a lesser offense."

▮▮▮ Defendant entered a plea of guilty[2] to violating Vehicle Code section 2800.2 as a felony. ▮▮ The conviction remained a felony until the sentencing hearing. (*People v. Banks* (1959) 53 Cal.2d 370, 381-382 [1 Cal.Rptr. 669, 348 P.2d 102]; see also *People v. Balderas* (1985) 41 Cal.3d 144, 203 [222 Cal.Rptr. 184, 711 P.2d 480].) When the court reduced the offense and sentenced defendant as a misdemeanant, the offense became " 'a misdemeanor for all purposes thereafter.' " (*People v. Banks, supra,* 53 Cal.2d at p. 381, quoting *Doble v. Superior Court* (1925) 197 Cal. 556, 577 [241 P. 852]; see also Pen. Code, § 17(b)(1).) Thus, when the superior court imposed a county jail sentence, it exercised a " 'sui generis' " power (*People*

---

[2]A guilty plea is the "legal equivalent" of a "verdict" (e.g., *People v. Valladoli* (1996) 13 Cal.4th 590, 601 [54 Cal.Rptr.2d 695, 918 P.2d 999]) and is "tantamount" to a "finding" (*People v. Gaines* (1980) 112 Cal.App.3d 508, 514 [169 Cal.Rptr. 381]; see also *In re Yurko* (1974) 10 Cal.3d 857, 863 [112 Cal.Rptr. 513, 519 P.2d 561]).

*v. Superior Court (Alvarez), supra,* 14 Cal.4th at p. 975) to modify the felony verdict or finding to a misdemeanor.

Our case law has consistently treated the misdemeanor as a lesser offense than the felony wobbler. In *Davis v. Municipal Court* (1988) 46 Cal.3d 64 [249 Cal.Rptr. 300, 757 P.2d 11], we stated that "a defendant who is charged with a felony wobbler is ineligible for such diversion primarily because the district attorney has cause to believe he or she has committed misconduct *which is punishable as a felony*; the fact that the prosecutor may have had discretion to charge the defendant with a misdemeanor rather than a felony does not give such a defendant the constitutional right to be treated as if he had been charged with the *lesser offense.*" (*Id.* at p. 82, second italics added.) Earlier this year, in *Manduley v. Superior Court* (2002) 27 Cal.4th 537 [117 Cal.Rptr.2d 168, 41 P.3d 3], we quoted *Davis* to compare favorably the prosecutor's discretion to file in juvenile court or adult court to the prosecutor's discretion to charge a wobbler as a felony or misdemeanor, a power that is " 'no different than any other legislative rule which accords differential treatment to an individual depending on whether a prosecutor believes a greater or *lesser charge* is appropriate.' " (*Id.* at p. 569, italics added; see also *People v. Terry* (1996) 47 Cal.App.4th 329, 331 [54 Cal.Rptr.2d 769] ["Whether a crime is a felony or a *lesser offense* is often dependent upon the type of punishment that is statutorily mandated" (italics added)]; cf. *People v. Norrell* (1996) 13 Cal.4th 1, 5 [51 Cal.Rptr.2d 429, 913 P.2d 458] [defining lesser offense as the offense carrying the shorter maximum term of imprisonment].) We will not lightly assume the Legislature intended a narrower interpretation of "lesser offense" than we ourselves have given the term.[3]

In lieu of offering an alternative interpretation of the statutory language, defendant argues that section 1238(a)(6) applies only when a trial court acts under section 1181, subdivision 6 or 7 to modify a verdict or finding. But, as the People point out, "there is nothing in the plain language of the statute that limits its applicability to section 1181." Accordingly, we do not accept defendant's invitation to go beyond the words of the statute.

■ " 'We begin with the fundamental rule that our primary task in construing a statute is to determine the Legislature's intent. [Citation.]' (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) ' "The court turns first to the words themselves for the answer." [Citations.]' (*Ibid.*) When the statutory language is clear and

---

[3]The dissenting opinion complains that the superior court's order did not change the "nature" and "identity" of the wobbler to a "different" offense. Section 1238(a)(6), however, does not use those terms.

unambiguous, there is no need for construction and courts should not indulge in it. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) The plain language of the statute establishes what was intended by the Legislature. (See *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 566 [39 Cal.Rptr.2d 374] [it is unnecessary to look beyond the plain words of the statute to determine intent].)" (*People* v. *Fuhrman* (1997) 16 Cal.4th 930, 937 [67 Cal.Rptr.2d 1, 941 P.2d 1189].)

Defendant impliedly concedes that his construction of section 1238(a)(6) is not supported by its plain language. He urges us instead to rely on "the interrelationship between that subdivision and section 1181" that we noted in *People v. Drake* (1977) 19 Cal.3d 749 [139 Cal.Rptr. 720, 566 P.2d 622] (*Drake*). In accordance with our well-settled principles of statutory interpretation, we see no need to refer to extrinsic materials. In any event, those materials do not aid defendant.

*Drake* involved an earlier version of section 1238(a)(6), which authorized an appeal by the People only from " '[a]n order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed.' " (*Drake, supra,* 19 Cal.3d at p. 754.) The superior court had convicted Drake of first degree robbery following a "slow plea" but, at the motion for new trial, modified the verdict to the lesser included offense of grand theft under section 1181, subdivision 6. (*Drake, supra,* at p. 753.) Invoking section 1238(a)(6), the People appealed, arguing that the judge had failed properly to discharge his duties under section 1181. (*Drake, supra,* at p. 753.) The threshold question for us, however, was "whether the law provides for an appeal in this case." (*Id.* at p. 754.)

We began by noting that section 1238(a)(6) "provides only for appeal from rulings which result in a reduction of the *degree* of the offense specified in the original verdict or finding, not from rulings which result in reductions to *lesser included* offenses. This impression is fortified when [section 1238(a)(6)] is compared with section 1181, subdivision 6, in which the Legislature is explicit in separately providing for the court's power to make both types of rulings: the latter subdivision [citation] declares that 'if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, *or of a lesser crime included therein,* the court may modify the verdict, finding, or judgment accordingly. . . .' (Italics added.)" (*Drake, supra,* 19 Cal.3d at pp. 754-755.)

We found additional support for our interpretation from the fact that subdivision (a)(6) had been added to section 1238 by the same legislation

that added subdivision 7 to section 1181, which made it "difficult" to attribute the comparatively restrictive language in subdivision (a)(6) to "legislative inadvertence." (*Drake, supra,* 19 Cal.3d at p. 755.) Thus assured that the Legislature "was aware of the intimate relationship between these two sections of the same code," we concluded that "the failure to provide in section 1238[(a)(6)] for appeals from orders modifying findings to lesser included offenses, while maintaining a distinct provision in section 1181, subdivision 6, for the authority to issue those orders, raises a strong inference that the Legislature did not intend the orders to be appealable by the People." (*Ibid.*)

Nowhere in *Drake* did we suggest that section 1238(a)(6) applies *only* when the People appeal a modification of a verdict or finding made under section 1181. The "close connection" and "intimate relationship" (*Drake, supra,* 19 Cal.3d at p. 755) we observed between section 1238(a)(6) and section 1181 merely aided us in assessing the significance of the more restrictive language in the former. If we did intend in *Drake* to limit section 1238(a)(6) to permit review only of those rulings described in section 1181, the limitation has gone unnoticed by the Courts of Appeal, which have regularly invoked section 1238(a)(6) to authorize a People's appeal to review rulings beyond those enumerated in section 1181. (E.g., *People v. Carrasco* (1988) 202 Cal.App.3d 1078, 1081 [249 Cal.Rptr. 154] [People's appeal of trial court's order striking prior serious felony conviction]; *People v. Salazar* (1987) 194 Cal.App.3d 634, 637, fn. 4 [239 Cal.Rptr. 746] [People's appeal of trial court's decision to stay sentence on greater offense under § 654]; see also *People v. Lagunas* (1994) 8 Cal.4th 1030, 1033-1034 [36 Cal.Rptr.2d 67, 884 P.2d 1015] [People's appeal of trial court's reduction of verdict to a lesser *related* offense]; see generally 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Appeal, § 3183, p. 3937 ["This provision has been construed to apply beyond the confines of [Penal Code section] 1181[, subdivisions 6, 7]"].) Accepting defendant's argument would require us to overrule these and other similar decisions.

Defendant's insistence that section 1238(a)(6) cannot support an appeal from any ruling beyond those enumerated in section 1181 is further undermined by the subsequent amendment to section 1238(a)(6), which added the words "or modifying the offense to a lesser offense." (See Stats. 1978, ch. 1359, § 2, p. 4511.) This language is broader than that used in section 1181, subdivision 6, which authorizes the court to modify a verdict, finding, or judgment only to "a lesser degree thereof, or of a lesser crime *included therein.*" (Italics added.) Thus, by the 1978 amendment, the Legislature not only overruled *Drake* but went further and authorized the People to appeal modifications of verdicts or findings to *all* lesser offenses, not merely lesser included offenses.

Defendant invites us to ignore the statute's plain language and infer instead from the timing of the amendment that the Legislature intended only to overrule the specific result in *Drake* and thus authorized appeals only from reductions to lesser *included* offenses. We must decline the invitation. ■ Our role in construing a statute should ordinarily be to determine the objective meaning of its provisions. (*People v. Jefferson* (1999) 21 Cal.4th 86, 96-97 [86 Cal.Rptr.2d 893, 980 P.2d 441].) A court may not rewrite a statute to conform to a presumed intent that is not expressed. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73-74 [109 Cal.Rptr.2d 1, 26 P.3d 332].)

■ Such restraint is especially appropriate where, as here, reliance on the statute's plain language renders a result that is consistent with the remainder of the statutory scheme. As stated above, the People may seek review by writ under section 1238, subdivision (d) when a trial court declares the wobbler offense to be a misdemeanor and grants probation, and may additionally file an appeal under section 1238, subdivision (a)(5) when the trial court declares the wobbler to be a misdemeanor after suspending the imposition of judgment and granting probation. By applying the plain meaning of the statutory language, the People will also be able to appeal when the trial court declares the wobbler to be a misdemeanor and, instead of granting probation, orders the defendant to serve time in jail or pay a fine. Neither defendant nor the dissenting opinion has explained why the Legislature would have wanted to allow an appeal in one circumstance but not the other. (Cf. *Drake, supra,* 19 Cal.3d at p. 755 ["in 1951 the Legislature had reason to provide for appeals by the state from degree reductions but not from orders modifying findings to lesser included offenses"].) We therefore hold that section 1238(a)(6) authorizes the People to appeal a trial court's order reducing a wobbler to a misdemeanor.

B

■ Defendant objects that if section 1238(a)(6) is so construed, it violates the state constitutional guarantee against double jeopardy, which provides that "[p]ersons may not twice be put in jeopardy for the same offense . . . ." (Cal. Const., art. I, § 15.)

This court has not before considered whether an appeal by the People of a trial court's reduction of a wobbler to a misdemeanor would run afoul of the state prohibition against double jeopardy. In neither *Douglas, supra,* 20 Cal.4th 85, where the People appealed the trial court's reduction to a misdemeanor following a grant of probation, nor *People v. Superior Court (Alvarez), supra,* 14 Cal.4th 968, where the People sought review by writ of

the trial court's reduction to a misdemeanor at the time probation was granted, did the defendant complain that the People's exercise of this statutory right to appellate review violated double jeopardy. (See also *Drake, supra,* 19 Cal.3d at p. 754 [finding it unnecessary to decide whether the People's appeal of the modification of the verdict to a lesser included offense violated double jeopardy]; *People v. Serrato* (1973) 9 Cal.3d 753, 762 & fn. 7 [109 Cal.Rptr. 65, 512 P.2d 289] [same].) That the issue is novel to our court, however, does not mean we are free to adopt defendant's argument.

▇▇ The double jeopardy clause in the federal Constitution, as we have noted, uses "words very similar" to California's. (*People v. Hernandez* (1998) 19 Cal.4th 835, 842 [80 Cal.Rptr.2d 754, 968 P.2d 465].) Under the federal clause, it is well settled that the government is free to appeal an adverse postverdict ruling by the trial court. (E.g., *United States v. DiFrancesco* (1980) 449 U.S. 117, 130 [101 S.Ct. 426, 433-434, 66 L.Ed.2d 328]; *United States v. Wilson* (1975) 420 U.S. 332, 344 [95 S.Ct. 1013, 1022, 43 L.Ed.2d 232] (*Wilson*); accord, *People v. Hatch* (2000) 22 Cal.4th 260, 276 [92 Cal.Rptr.2d 80, 991 P.2d 165] ["the United States Supreme Court has held that the double jeopardy clause only prohibits multiple trials and does not preclude appeals from postconviction rulings made by a trial court"].) ▇▇ "[W]here there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." (*Wilson, supra,* 420 U.S. at p. 344 [95 S.Ct. at p. 1022].) "These interests . . . do not apply in the case of a postverdict ruling of law by the trial judge. Correction of an error of law at that stage would not grant the prosecutor a new trial or subject the defendant to the harassment traditionally associated with multiple prosecutions. We therefore conclude that when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause." (*Id.* at pp. 352-353 [95 S.Ct. at p. 1026].)

▇▇ Where, as here, the issue has not been "firmly settled" under state constitutional law (*People v. Hanson* (2000) 23 Cal.4th 355, 364 [97 Cal.Rptr.2d 58, 1 P.3d 650]), " 'cogent reasons must exist before a state court in construing a provision of the state Constitution will depart from the construction placed by the Supreme Court of the United States on a similar provision in the federal Constitution.' " (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 353 [276 Cal.Rptr. 326, 801 P.2d 1077].) ▇▇ Defendant offers none here, and none can be imagined. The state and federal provisions not only use similar language, but also target the same evils—successive prosecutions and multiple punishments. (*People v. Bright* (1996) 12 Cal.4th 652, 660 [49 Cal.Rptr.2d 732, 909 P.2d 1354].) Permitting the People to

appeal an assertedly unlawful sentence does not implicate either concern. (*Wilson, supra*, 420 U.S. at pp. 344-345 [95 S.Ct. at p. 1022] ["Since reversal on appeal would merely reinstate the jury's verdict, review of such an order does not offend the policy against multiple prosecutions"]; *United States v. Halper* (1989) 490 U.S. 435, 450 [109 S.Ct. 1892, 1903, 104 L.Ed.2d 487] ["the multiple-punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature"].) Accordingly, we conclude that the People's appeal does not violate the state constitutional guarantee against double jeopardy.

## C

■ Invoking *People v. Collins* (1986) 42 Cal.3d 378 [228 Cal.Rptr. 899, 722 P.2d 173] (*Collins*) and *People v. Chi Ko Wong* (1976) 18 Cal.3d 698 [135 Cal.Rptr. 392, 557 P.2d 976] (*Chi Ko Wong*), defendant asks that any construction of section 1238(a)(6) that is adverse to him be given only prospective effect and not be used to affirm the People's right to appeal here. We find no reason to craft such a limitation.

In *Collins*, we elected on "policy grounds" to accord only prospective effect to our adoption of the rule announced in *Luce v. United States* (1984) 469 U.S. 38 [105 S.Ct. 460, 83 L.Ed.2d 443], i.e., that the denial of a motion to exclude a prior conviction offered for impeachment is not reviewable on appeal if the defendant fails to testify. (*Collins, supra*, 42 Cal.3d at p. 388.) In *Chi Ko Wong*, we accorded only prospective effect to our determination that review of orders certifying juveniles for prosecution as adults will be deemed waived unless defendant files a timely petition for extraordinary writ. (*Chi Ko Wong, supra*, 18 Cal.3d at pp. 714, 716.) Our election to accord only prospective effect to those rulings was driven by "[c]onsiderations of fundamental fairness." (*Collins, supra*, 42 Cal.3d at p. 388.) In *Collins*, our decision established "a new rule of law when there was a previous rule in this state to the contrary" (*ibid.*); in *Chi Ko Wong*, the only reported cases at the time of the certification order supported defendant's decision to assert his challenge on appeal from the ensuing conviction. (*Chi Ko Wong, supra*, 18 Cal.3d at p. 716 & fn. 14.) Announcing a rule with only a prospective effect thus preserved the right to challenge important rulings on appeal by a defendant " 'who did all that was necessary to comply with the law applicable at the time of his trial.' " (*Collins, supra*, 42 Cal.3d at p. 389.)

Fundamental fairness does not require a prospective-only rule here, however. No previous rule barring the People from appealing the trial court's exercise of discretion under section 17(b)(1) existed in this state. Nor did any conflict exist as to the construction of section 1238(a)(6). Indeed,

several Court of Appeal opinions assumed or implied that the People had a right to appeal a reduction to a misdemeanor under similar circumstances. (E.g., *People v. Dent, supra,* 38 Cal.App.4th at pp. 1730-1731; *People v. Trausch, supra,* 36 Cal.App.4th at pp. 1243, fn. 5, 1247-1248.) Moreover, application of section 1238(a)(6) to authorize the People's appeal in this case does not, as defendant asserts, modify *his* appellate rights "in a manner that 'change[s] the rules after the contest [is] over.'" Unlike Collins or Chi Ko Wong, defendant will lose no appellate rights if we apply the rule we announce today to this case.

Defendant's final claim in support of dismissal of the appeal rests on his assertion that he has already served his one-year term in the county jail.[4] Citing *People v. Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328] *(Tanner),* he contends that "applying a newly recognized right to appellate review in this case would be unfair to [him] because he has served his sentence in full."

In *Tanner,* we concluded that the Legislature did not intend for a firearm-use finding under section 1203.06, which rendered the defendant ineligible for probation, to be subject to the judicial power to dismiss or strike under section 1385. The trial court, by unlawfully dismissing the probation-ineligibility clause, had granted Tanner probation and a one-year jail term, and Tanner had successfully complied with both. *(Tanner, supra,* 24 Cal.3d at pp. 518, 522.) Without explaining whether our decision rested on constitutional grounds or on our inherent powers, we concluded it would be "unfair" and "unjust" to require Tanner to serve a second term for his criminal act. *(Id.* at pp. 521-522; but see *People v. Warner* (1978) 20 Cal.3d 678, 689 [143 Cal.Rptr. 885, 574 P.2d 1237] [reversing for resentencing upon a finding that the trial court had abused its discretion in granting probation, notwithstanding the possibility that "defendant may have defied the odds by leading a blameless life during this period"].) In so ruling, we relied entirely on a "highly similar" case *(Tanner, supra,* at p. 521) from the United States Court of Appeals for the Fifth Circuit, *United States v. Denson* (5th Cir. 1979) 588 F.2d 1112, which "stated, among other things: 'These Defendants have been told after such prosecutions and investigations that they would be subjected to one year's incarceration to be followed by five years supervision. They prepared to surrender for such incarceration. They have adjusted their lives to the punishment assessed. They have sought and secured employment opportunities consistent with the term of incarceration imposed. To withdraw the probation granted for which the Defendants and their families have

---

[4]As stated above, the superior court at sentencing credited defendant with 355 days of the 365-day sentence. However, the record contains no evidence to show that defendant has in fact completed his jail term.

prepared themselves would work a substantial hardship on the Defendants and their families.' (*Id.*, at p. 1132.)" (*Tanner, supra,* 24 Cal.3d at p. 521.)

Since *Tanner* was decided, we have never relied on it to pretermit the correction of a sentence that was illegally or improperly imposed. This is not surprising. Four months after *Tanner* was decided, the Fifth Circuit Court of Appeals vacated the panel decision on which *Tanner* had relied. The sole purpose of the rehearing in bank was to disavow the passage that *Tanner* had quoted. (*United States v. Denson* (5th Cir. 1979) 603 F.2d 1143, 1145 ["En banc we differ only with that panel's final decision not to issue the writ"].) "We do not perceive that granting the petition [for writ of mandamus] would work a substantially greater hardship on the defendants than would have been exacted by a lawful sentence imposed initially. The mere fact that the defendants have psychologically prepared themselves for a total of one year's incarceration and may, as a result of our action, have their expectations frustrated does not compel a different result. The trial judge may take into account any difficulties caused by resentencing when he imposes a new and legal sentence just as he may consider any other appropriate factors when they militate toward lenity or severity." (*Id.* at p. 1148.)

Like the Fifth Circuit, we cannot discern how the imposition of a harsher sentence on appeal, should that occur, would work a substantially greater hardship on defendant. " 'The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.' " (*United States v. DiFrancesco, supra,* 449 U.S. at p. 135 [101 S.Ct. at p. 436].) We are unaware of any authority that provides "the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. . . . His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked." (*Id.* at p. 137 [101 S.Ct. at p. 437].)

Nor is this a situation in which defendant will suffer a punishment in excess of the legal maximum. As the People point out, defendant's jail term will be credited against any state prison term that may be imposed. (Compare § 2900.1 with *People v. Bailey* (1997) 45 Cal.App.4th 926, 930 [53 Cal.Rptr.2d 198] ["The inherent unfairness, which would result in Bailey successfully serving a substantial part of the probationary period but receiving no credit toward a prison sentence, could have been avoided had the People sought timely writ review"].)[5] "While it would not have been possible to 'credit' a fine against time in prison, crediting time served under one

---

[5]In seeming recognition of this distinction, the Courts of Appeal have limited *Tanner* to circumstances in which (1) the defendant has successfully completed an unauthorized grant of

sentence against the term of another has long been an accepted practice." (*Jones v. Thomas* (1989) 491 U.S. 376, 384 [109 S.Ct. 2522, 2527, 105 L.Ed.2d 322].) So long as the punishment defendant has already suffered is "fully 'credited'" against any new sentence, the constitutional guarantee against multiple punishments is not compromised. (*North Carolina v. Pearce* (1969) 395 U.S. 711, 718-719 [89 S.Ct. 2072, 2077, 23 L.Ed.2d 656; *United States v. Edmonson* (9th Cir. 1986) 792 F.2d 1492, 1496.)

In any event, *Tanner* does not provide authority for the relief defendant seeks here, which is dismissal of the appeal. After all, we did not dismiss the appeal in *Tanner*; we merely declined to order the defendant to serve the required prison term. (*Tanner, supra,* 24 Cal.3d at p. 522.) Here, we are presented solely with the question whether the People may appeal the trial court's decision to reduce defendant's offense to a misdemeanor. Our decision that an appeal lies does not express any view as to the merits of the People's appeal or, should the appeal be successful, as to an appropriate sentence. (See *In re Johnson* (1992) 8 Cal.App.4th 618, 626 [10 Cal.Rptr.2d 460] ["Whereas in *Tanner* . . . there was absolute certainty that if the judgment were reversed the defendant would be imprisoned for an identifiable term, here it is not known whether Johnson's parole will be rescinded"].) *Tanner* thus does not justify dismissal of the appeal.

## III

The judgment of the Court of Appeal dismissing the People's appeal is reversed. The matter is transferred to the Court of Appeal for consideration of the appeal on the merits.

George, C. J., Chin, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J.,** Dissenting.—The majority holds that a superior court judgment imposing a misdemeanor sentence for a "wobbler" offense is "[a]n order . . . modifying the offense to a lesser offense" (Pen. Code, § 1238, subd. (a)(6)) and thus an order from which the People may appeal. I disagree. The sentence imposed on a wobbler determines the *grade* or *class* of the crime as either a felony or a misdemeanor, but the sentence imposed does not change the *nature* or *identity* of the offense and so does not *modify* the *offense* to a lesser offense. Therefore, I would hold that the People may not appeal from a judgment imposing a misdemeanor sentence on a wobbler.

---

probation; (2) the defendant has returned to a law-abiding and productive life; and (3) "unusual circumstances" generate a "unique element" of sympathy, such that returning the defendant to jail "would be more than usually painful or 'unfair.'" (*People v. Lockridge* (1993) 12 Cal.App.4th 1752, 1759 [16 Cal.Rptr.2d 340] [collecting cases].) Even if *Tanner* remains good law, defendant cannot satisfy this test.

Penal Code section 17 defines the terms "felony" and "misdemeanor." Subdivision (a) of that section reads: "A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions." Subdivision (b) of section 17 acknowledges that some offenses are "punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail." These offenses may be either felonies or misdemeanors. They are known as alternative felony-misdemeanors or, more informally, as wobblers. Subdivision (b) of Penal Code section 17 specifies the circumstances under which a wobbler becomes a misdemeanor: (1) when the court imposes a punishment other than imprisonment in the state prison; (2) when the court designates the offense to be a misdemeanor upon committing the defendant to the Youth Authority; (3) when the court designates the offense to be a misdemeanor upon granting probation without imposition of sentence; (4) when a complaint charging the offense specifies that it is a misdemeanor; and (5) when the magistrate declares the offense to be a misdemeanor at or before the preliminary examination or before filing an order holding the defendant to answer under Penal Code section 872.

From its earliest days, this court has distinguished between the *nature* or *identity* of a crime—such as murder, robbery, arson, and so forth—and the *class* or *grade* or the crime as being a felony, misdemeanor, or infraction. In *People v. War* (1862) 20 Cal. 117, an indictment charged the defendant with assault with a deadly weapon, a wobbler, without specifying whether the offense was a felony or a misdemeanor. This court held that the charge was sufficient. "The real objection to this indictment, if there be any, is that the facts set forth do not constitute a public offense, because the punishment prescribed being either imprisonment in the State prison or a fine, it does not appear whether it is a felony or a misdemeanor, and hence it does not necessarily fall within any class of crimes known to the law." (*Id.* at p. 119.) We held that because a wobbler is punishable by imprisonment in the state prison, an indictment alleging a wobbler (without specifying that it was a misdemeanor) necessarily charged a felony, and the crime would become a misdemeanor only upon imposition of a misdemeanor sentence. (*Id.* at pp. 119-120.) We were careful to point out, however, that a wobbler's dual classification as either felony or misdemeanor did not mean that a wobbler is two distinct crimes: "The discretion given as to the punishment certainly does not make the same act two offenses . . . ." (*Id.* at p. 119; accord, *People v. Collins* (1925) 195 Cal. 325, 347 [233 P. 97].)

The way that this court has consistently defined and described wobblers shows our understanding that a wobbler is not two separate offenses, one a

felony and the other a misdemeanor, but rather a single offense that, in the discretion of the sentencing court, may be classified either as a felony or as a misdemeanor. Thus, we have said that a wobbler is *"an offense* which may be charged and punished as either a felony or a misdemeanor." (*Davis v. Municipal Court* (1988) 46 Cal.3d 64, 70 [249 Cal.Rptr. 300, 757 P.2d 11], italics added; see also *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 974 [60 Cal.Rptr.2d 93, 928 P.2d 1171]; *People v. Holt* (1984) 37 Cal.3d 436, 452, fn. 7 [208 Cal.Rptr. 547, 690 P.2d 1207]; *People v. Satchell* (1971) 6 Cal.3d 28, 35, fn. 13 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]; *In re Sanchez* (1966) 65 Cal.2d 556, 557 [55 Cal.Rptr. 422, 421 P.2d 430]; *People v. Banks* (1959) 53 Cal.2d 370, 380-383 [1 Cal.Rptr. 669, 348 P.2d 102].)

The conclusion that a wobbler is a single offense that may be graded or classified as either a felony or a misdemeanor has practical significance in the application of the statute of limitations. In a criminal case, the jury may convict the defendant of either the charged offense or a lesser offense that is necessarily included within the charged offense. (Pen. Code, § 1159.) But a defendant who has been timely charged with a felony offense may assert the statute of limitations as a defense to prevent conviction of a time-barred lesser included misdemeanor offense. (See *People v. Picetti* (1899) 124 Cal. 361 [57 P. 156]; see generally *People v. Williams* (1999) 21 Cal.4th 335, 349-350 [87 Cal.Rptr.2d 412, 981 P.2d 42] (dis. opn. of Brown, J.); *People v. Stanfill* (1999) 76 Cal.App.4th 1137, 1145-1150 [90 Cal.Rptr.2d 885].) As codified, this rule declares that "[t]he limitation of time applicable to an offense that is necessarily included within a greater offense is the limitation of time applicable to the lesser included offense, regardless of the limitation of time applicable to the greater offense." (Pen. Code, § 805, subd. (b).)

This rule restricting conviction of time-barred lesser offenses does not apply to a wobbler charged as a felony but sentenced as a misdemeanor. The statute of limitations for felony offenses applies to a wobbler charged as a felony even when the wobbler is sentenced as a misdemeanor. (*Doble v. Superior Court* (1925) 197 Cal. 556, 575-577 [241 P. 852].) As codified, the rule governing the statute of limitations for wobblers declares that "[a]n offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed." (Pen. Code, § 805, subd. (a).) The reason for this distinction is " 'that a crime which is punishable by imprisonment either in the state prison or by fine or imprisonment in the county jail in the discretion of the court, is, and forever remains, a felony, but that if the punishment imposed is other than imprisonment in the state prison, *although the nature of the crime is not changed,* yet for all purposes thereafter arising it is regarded as being a

misdemeanor.' " (*Doble v. Superior Court, supra,* at p. 574, italics added, original italics omitted.)

Here, the prosecution by information charged defendant Russell Hubert Statum with reckless driving while fleeing a police officer "in violation of Vehicle Code section 2800.2, a Felony." Defendant pleaded guilty to this offense as charged, and the superior court imposed a misdemeanor sentence of one year in county jail for this wobbler offense. When the People attempted to appeal from the judgment, the Court of Appeal dismissed the appeal as unauthorized.

Reversing the Court of Appeal, the majority holds that the People's appeal is authorized by a Penal Code provision allowing the People to appeal from "[a]n order . . . modifying the offense to a lesser offense." (Pen. Code, § 1238, subd. (a)(6).) To determine the meaning of this provision, the majority correctly states but incorrectly applies the rules of statutory construction. The goal of statutory construction is to ascertain and effectuate legislative intent. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) A court begins with the statute's words, because they are generally the most reliable indicator of the legislative intent, giving those words their ordinary meaning, and if no ambiguity appears then the process of construction is complete and the ordinary meaning controls. (*Ibid.*)

The ordinary meaning of "modifying the offense to a lesser offense" (Pen. Code, § 1238, subd. (a)(6)) is changing the identity of the conviction offense to a different and lesser offense. Here, by imposing a misdemeanor sentence for a wobbler, the superior court did not change the identity of the offense. The conviction offense, both before and after sentencing, was a violation of Vehicle Code section 2800.2 (reckless driving while fleeing a police officer). Because the identity of the conviction offense was unaffected, the court in imposing sentence did not modify the offense to a lesser offense within the plain meaning of the Penal Code provision specifying when the People may appeal in a criminal case. (Pen. Code, § 1238, subd. (a)(6).)

The majority asserts that in 1978, when it amended Penal Code section 1238 to permit the People to appeal from an order "modifying the offense to a lesser offense" (Stats. 1978, ch. 1359, § 2, p. 4511), the Legislature intended to authorize the People to appeal not only orders modifying the conviction to a different crime, but also judgments imposing misdemeanor sentences after a jury conviction of a wobbler. I disagree.

In 1978, when the Legislature amended Penal Code section 1238 to permit a People's appeal from an order "modifying the offense to a lesser offense,"

laws allowing the prosecution to appeal a trial court's sentencing determination were virtually nonexistent. As a professor at Michigan Law School pointed out in 1980, "[a]lthough several states allow the prosecution to cross-appeal a defendant's sentence for the purpose of seeking an increase on appeal *in response* to a defendant's prior appeal of sentence, no state permits the prosecution to *initiate* an appeal of sentence for the purpose of seeking an increase on appeal." (Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences* (1980) 78 Mich. L.Rev. 1001, 1001, fn. 3.)

The reason no state law then permitted a prosecutor to appeal a trial court's discretionary sentencing decision appears to be that the imposition of a greater sentence on a criminal defendant after an appeal by the prosecution was widely viewed as violating the federal Constitution's double jeopardy clause (U.S. Const., 5th Amend.). Although the United States Supreme Court had never squarely addressed the issue, dictum in at least one decision strongly hinted that such increased sentences were unconstitutional. (*United States v. Benz* (1931) 282 U.S. 304, 307 [51 S.Ct. 113, 114, 75 L.Ed. 354].) It was only in 1980, two years *after* our Legislature's 1978 amendment of Penal Code section 1238, that the United States Supreme Court, by a bare majority of five to four, upheld the constitutionality of prosecutorial appeals of judicial sentencing decisions. (*United States v. DiFrancesco* (1980) 449 U.S. 117 [101 S.Ct. 426, 66 L.Ed.2d 328].)

On at least two occasions before the 1978 amendment of Penal Code section 1238, this court had stated that a court of record could not increase a lawfully imposed penalty without unconstitutionally subjecting the defendant to double punishment. (*People v. Dorado* (1965) 62 Cal.2d 338, 360 [42 Cal.Rptr. 169, 398 P.2d 361]; *People v. Thomas* (1959) 52 Cal.2d 521, 530-531 [342 P.2d 889]; see also *People v. Superior Court (Duran)* (1978) 84 Cal.App.3d 480, 486-489 [148 Cal.Rptr. 698]; *People v. Belton* (1978) 84 Cal.App.3d Supp. 23, 29-30 [149 Cal.Rptr. 231].) I presume that in 1978 the Legislature was aware of these statements by this court and that it enacted and amended statutes in light of these decisions. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; accord, *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155 [278 Cal.Rptr. 614, 805 P.2d 873].

Presumably because of its sensitivity to the then existing constitutional concerns, as expressed in this court's decisions, the Legislature, when it amended Penal Code section 1238, did not alter the existing rule barring People's appeals from discretionary sentencing decisions imposing a sentence within the statutorily authorized range of punishments for the offense

of which the defendant had been convicted. Instead, when it authorized a People's appeal from an order "modifying the offense to a lesser offense" (Pen. Code, § 1238, subd. (a)(6)), the Legislature intended to authorize People's appeals only when the trial judge *overturned* a jury verdict or guilty plea by changing the nature or identity of the conviction offense. The Legislature had reason to believe such appeals were constitutionally permissible because, three years before, the high court had held that the double jeopardy clause permits prosecutorial appeals in a similar situation: when a trial court overturns a jury's verdict convicting the defendant by entering a judgment of acquittal. (*United States v. Wilson* (1975) 420 U.S. 332 [95 S.Ct. 1013, 43 L.Ed.2d 232].) Neither the ordinary meaning of the language used nor the legislative history surrounding the amendment, however, suggests that the Legislature intended to authorize prosecutorial appeals when the trial court, without changing the identity of the conviction offense, exercises its discretion to impose a sentence within the statutory range of punishments authorized for that offense, as a trial court does when it imposes a misdemeanor sentence for a wobbler.

For these reasons, I agree with the Court of Appeal that the People's appeal is unauthorized and should be dismissed.

Werdegar, J., concurred.